80 A.3d 718

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

George Jacob GEESING.

Misc. Docket AG No. 36, Sept. Term, 2012.

Court of Appeals of Maryland.

Dec. 3, 2013.

James P. Botluk, Assistant Bar Counsel (Glenn M. Grossman, Bar Counsel, Attorney Grievance Commission of Maryland), for Petitioner.

Kathleen H. Meredith, Esquire (of Illiff, Meredith, Wildberger & Brennan, Pasadena, MD), for Respondent.

Argued before: BARBERA, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, McDONALD and WATTS, JJ.

WATTS, J.

This attorney discipline proceeding concerns a Maryland attorney who "robo-signed" a large number of documents in foreclosure filings.[1]

George Jacob Geesing ("Geesing"), Respondent, a member of the Bar of Maryland, routinely authorized two non-lawyer members of the staff of what is now BWW Law Group, LLC ("BWW Law") to sign his name on documents—including affidavits—in foreclosure filings. Geesing instructed the staff members (who were also notaries public) to notarize the affidavits, even though he had not signed them. After learning of allegations that the affidavits had been falsely notarized, Geesing reported himself to the Attorney Grievance Commission of Maryland ("the Commission"), Petitioner.

On September 6, 2012, in this Court, Bar Counsel filed a "Petition for Disciplinary or Remedial Action" against Geesing, charging him with violating Maryland Lawyers' Rules of Professional Conduct ("MLRPC") 3.3 (Candor Toward the Tribunal), 5.1 (Responsibilities of Partners, Managers, and Supervisory Lawyers), 5.3 (Responsibilities Regarding Non-lawyer Assistants), and 8.4 (Misconduct).

On September 13, 2012, we referred this attorney discipline proceeding to the Honorable Louise G. Scrivener ("the hearing judge") of the Circuit Court for Montgomery County. On March 3, 2013, the hearing judge conducted a hearing. On April 2, 2013, the hearing judge filed, in this Court, an opinion including findings of fact and concluding that Geesing violated

---

1.  " 'Robo-signing' . . . most often refers to the process of mass-producing affidavits for foreclosures without having knowledge of or verifying the facts." *Attorney Grievance Comm'n v. Dore*, 433 Md. 685, 688–89, 73 A.3d 161, 163 (2013). "Robo-signing" may also refer to the mass-production of affidavits that the affiant did not sign. *See id.* at 711, 73 A.3d at 176. As discussed below, this attorney discipline proceeding involves the latter type of "robo-signing."

MLRPC 3.3(a)(1), 5.3(a), 8.4(a), and 8.4(d), but did not violate 8.4(c).[2]

On October 31, 2013, we heard oral argument. For the below reasons, we suspend Geesing from the practice of law in Maryland for ninety days.

## I. Hearing Judge's Findings of Fact

In her opinion, the hearing judge found the following facts,[3] which we summarize.

On December 15, 1988, this Court admitted Geesing to the Bar of Maryland. On April 1, 1996, Geesing co-founded a law firm called Bierman & Geesing, LLC, which is now BWW Law. In August 2008, Geesing began managing BWW Law's foreclosure practice in Maryland. Since then, Geesing has been the attorney of record in all of BWW Law's foreclosure filings.

### A. Robo–Signing

Typically, members of BWW Law other than Geesing prepared documents to be included in foreclosure filings. Geesing reviewed all such documents for accuracy. Routinely, Geesing authorized one of two non-lawyer members of BWW Law's staff to sign his name on the documents, including affidavits. Geesing instructed the staff members (who were also notaries public) to notarize the affidavits, even though he had not signed them. Geesing believed that, because he adopted the signatures as his own, it was legal to authorize the staff members to sign documents in foreclosure filings. Between August 2008 and November 2009, the two members of BWW Law's staff signed Geesing's name on nearly every document in BWW Law's foreclosure filings.[4]

---

2. The hearing judge did not rule on whether Geesing violated MLRPC 5.1.

3. The hearing judge adopted the parties' joint proposed findings of fact.

4. The record does not reveal the number of documents on which the staff members signed Geesing's name.

In November 2009, in five foreclosure actions in which BWW Law represented the mortgagees, the mortgagors filed motions to stay or dismiss. The mortgagors alleged that the affidavits in BWW Law's foreclosure filings were: (1) falsely notarized; and (2) not signed by Geesing. Within two days of receiving the five motions to stay or dismiss, Geesing met with a lawyer who had experience in representing lawyers in attorney discipline proceedings. After the meeting with the lawyer, Geesing no longer believed that it was legal to authorize the staff members to sign documents in foreclosure filings. Through the lawyer, Geesing reported himself to the Commission.

On November 18, 2009, Geesing e-mailed every member of BWW Law's staff, stating that he would no longer robo-sign, *i.e.*, authorize others to sign and notarize his name on documents in foreclosure filings. Since then, BWW Law has banned robo-signing, as stated in BWW Law's current employee handbook.

Geesing informed the mortgagees of the motions to stay or dismiss. Geesing recommended that the mortgagees allow BWW Law—at its own expense—to dismiss the foreclosure actions and re-file each with documents that he had signed. The mortgagees consented, and—at a cost of approximately $2,500 per action—BWW Law dismissed the foreclosure actions and re-filed each with documents that Geesing had signed.

Geesing identified approximately 2,500 open foreclosure actions in which BWW Law represented the mortgagees. Geesing contacted each mortgagee to recommend that the mortgagee allow BWW Law—at its own expense—to file a "corrective affidavit" in which Geesing averred that he did not sign the documents in the foreclosure filing, but that the documents in the foreclosure filing were otherwise substantively accurate. Geesing informed the Commission of his plan to file corrective affidavits. The mortgagees consented to Geesing's plan, and—from November 2009 through March 2010, at a total cost of approximately $140,000—BWW Law

filed corrective affidavits in all open foreclosure actions in which BWW Law represented the mortgagees.

After BWW Law filed the corrective affidavits, most circuit courts ratified the foreclosure sales without requiring further action. However, several circuit courts ordered Geesing to replace the documents that he had not signed. Geesing complied with all such orders, and the foreclosure actions proceeded.

In two foreclosure actions in which BWW Law represented the mortgagees, the mortgagors raised on appeal the issue of whether the robo-signing invalidated the ratification of the foreclosure sales. In one foreclosure action, the Court of Special Appeals remanded to a circuit court for a hearing on exceptions to the foreclosure sale without addressing the merits of the robo-signing issue. The circuit court denied the exceptions, and the Court of Special Appeals affirmed the denial of the exceptions. In the other foreclosure action, the Court of Special Appeals affirmed the ratification of the foreclosure sale. This Court granted *certiorari;* however, before this Court issued an opinion, the mortgagee voluntarily dismissed the foreclosure action for reasons that were unrelated to the robo-signing.

Certain mortgagors filed several lawsuits arising out of the robo-signing against Geesing and BWW Law. For example, on October 13, 2010, in the United States District Court for the District of Maryland, certain mortgagors sued Geesing and others for various causes of action arising out of the robo-signing. *See Stewart v. Bierman,* 859 F.Supp.2d 754, 757 (D.Md.2012), *aff'd sub nom. Lembach v. Bierman,* 528 Fed. Appx. 297 (4th Cir.2013) (unreported). On May 8, 2012, the United States District Court for the District of Maryland dismissed the action for failure to state a claim. *See Stewart,* 859 F.Supp.2d at 770. The mortgagors appealed, and on June 12, 2013, the United States Court of Appeals for the Fourth Circuit affirmed the dismissal. *See Lembach,* 528 Fed.Appx.

at 299–300.[5]

## B. Mitigating Factors

Geesing has no prior disciplinary record. Geesing author-ized the staff members to sign his name on documents in foreclosure filings because he wanted to expedite services to mortgagees, not because of a dishonest or selfish motive. Once Geesing no longer believed that it was legal to authorize the staff members to sign documents in foreclosure filings, Geesing made timely good-faith efforts to rectify the conse-quences of his misconduct. By reporting himself to the Com-mission, Geesing engaged in full and free disclosure to the Commission; additionally, Geesing agreed to submit joint proposed findings of fact, and otherwise showed a cooperative attitude toward the proceedings before the hearing judge. Geesing's "good character has led him to help those in need, while still protecting the interests of his clients." As to imposition of other penalties, Geesing's misconduct: (1) cost BWW Law approximately $152,500; (2) caused significant media coverage; (3) caused three mortgagees (who had con-tributed one-fifth of BWW Law's foreclosure practice in Mary-land) to end BWW Law's representation; and (4) prompted Geesing to encourage his partners to remove his name from BWW Law's title. Geesing showed remorse for his miscon-duct, not merely because of this attorney disciplinary proceed-ing, but mainly because he dishonored his profession and disappointed his partners and his family, and because others may view the judicial process negatively as a result of his misconduct.

## II. Standard of Review

Neither party excepts to the hearing judge's findings of fact; thus, we "treat the findings of fact as established[.]" Md. R. 16–759(b)(2)(A). We "review de novo the [hearing] judge's conclusions of law." Md. R. 16–759(b)(1).

---

5. At the time that the hearing judge issued her opinion, the appeal was pending in the United States Court of Appeals for the Fourth Circuit.

### III.  Discussion

### A.  Violations of MLRPC

Bar Counsel does not except to any of the hearing judge's conclusions of law.[6]  Geesing excepts solely to the hearing judge's conclusion that he violated MLRPC 3.3(a)(1) (Making or Failing to Correct a False Statement to a Tribunal).  For the below reasons, we overrule Geesing's exception and uphold all of the hearing judge's conclusions of law.

### MLRPC 3.3(a)(1) (Making or Failing to Correct a False Statement to a Tribunal)

■ Geesing contends that he did not violate MLRPC 3.3(a)(1) because he made false statements to tribunals negligently, not knowingly.  The Commission responds that Geesing violated MLRPC 3.3(a)(1) by filing affidavits that he knew to have been falsely notarized.

"A lawyer shall not knowingly[ ] make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer[.]"  MLRPC 3.3(a)(1).

Here, clear and convincing evidence supports the hearing judge's conclusion that Geesing violated MLRPC 3.3(a)(1).  Routinely, Geesing authorized one of two members of BWW Law's staff to sign his name on documents—including affidavits—in foreclosure filings.  Geesing instructed the staff members (who were also notaries public) to notarize the affidavits, even though he had not signed them.  A notary public properly notarizes a document only if the document is signed in the notary public's presence.  *See* Md.Code Regs. ("COMAR")

---

6.  Because the Commission does not except to any of the hearing judge's conclusions of law, we do not review the hearing judge's conclusion that Geesing did not violate MLRPC 8.4(c) (Dishonesty, Fraud, Deceit or Misrepresentation).  *See Dore,* 433 Md. at 707, 73 A.3d at 174 ("Ordinarily, we will not look for additional violations where [the Commission] filed no exceptions.").  However, as we did in *Dore, id.* at 707–08, 73 A.3d at 174, we emphasize that—even if an attorney does not intend to deceive—the attorney violates MLRPC 8.4(c) by knowingly making a false statement.

01.02.08.02A(2) ("To take an acknowledgment, a notary shall ... [o]bserve the signing of the document[.]"). Thus, Geesing filed affidavits that he knew to have been falsely notarized.

We reject Geesing's contention that he did not knowingly make false statements of fact. It is true that Geesing believed that, because he adopted the signatures as his own, it was legal to authorize the staff members to sign documents in foreclosure filings. However, as the hearing judge noted, Geesing had no reason to believe that a notary public could properly notarize a document that was not signed in the notary public's presence. Thus, by filing falsely notarized affidavits in circuit courts, Geesing falsely represented to the circuit courts that the affidavits had been properly notarized.

## MLRPC 5.3(a) (Responsibilities Regarding Nonlawyer Assistants)

MLRPC 5.3(a) states:

With respect to a non[-]lawyer employed or retained by or associated with a lawyer[,] a partner, and a lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm[,] shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the [non-lawyer]'s conduct is compatible with the professional obligations of the lawyer[.]

Here, clear and convincing evidence supports the hearing judge's conclusion that Geesing violated MLRPC 5.3(a).[7] Routinely, Geesing authorized one of two non-lawyer members of BWW Law's staff to sign his name on documents-including affidavits-in foreclosure filings. Geesing instructed the staff members (who were also notaries public) to notarize the affidavits, even though he had not signed them. A notary public properly notarizes a document only if the document is signed in the notary public's presence. *See* COMAR 01.02.08.02A(2). Thus, Geesing instructed the non-lawyer

---

7. Before the hearing judge, the parties agreed that Geesing violated MLRPC 5.3(a).

staff members to engage in conduct that was incompatible with Geesing's professional obligations.

### MLRPC 8.4(d) (Conduct Prejudicial to the Administration of Justice)

"It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice[.]" MLRPC 8.4(d). "In general, a[ lawyer] violates [MLRPC] 8.4(d) when his or her conduct impacts negatively the public's perception or efficacy of the courts or legal profession." *Attorney Grievance Comm'n v. Dore*, 433 Md. 685, 696, 73 A.3d 161, 167 (2013) (citation and internal quotation marks omitted).

Here, clear and convincing evidence supports the hearing judge's conclusion that Geesing violated MLRPC 8.4(d). As the hearing judge noted, "[Geesing]'s actions reflect adversely on the public's perception of the legal profession in that [they] demonstrate[ ] a pattern of falsity and a cavalier attitude regarding the function and purpose of the notary attestation." As proof of the negative impact that Geesing's misconduct had on the public's perception of the legal profession, Geesing's misconduct: (1) caused significant media coverage; (2) prompted certain mortgagors to file several lawsuits arising out of the robo-signing against Geesing and BWW Law; (3) caused three mortgagees (who had contributed one-fifth of BWW Law's foreclosure practice in Maryland) to end BWW Law's representation; and (4) prompted Geesing to encourage his partners to remove his name from BWW Law's title. Additionally, as proof of the negative impact that Geesing's misconduct had on the efficacy of the courts: (1) BWW Law dismissed five foreclosure actions and re-filed each with documents that Geesing had signed; (2) BWW Law filed corrective affidavits in approximately 2,500 open foreclosure actions in which BWW Law represented the mortgagees; (3) several circuit courts ordered Geesing to replace documents that he had not signed; and (4) in two foreclosure actions in which BWW Law represented the mortgagees, the mortgagors raised on appeal the issue of whether the robo-signing invalidated the ratification of the foreclosure sales.

## MLRPC 8.4(a) (Violating MLRPC)

"It is professional misconduct for a lawyer to[ ] violate or attempt to violate the [MLRPC], knowingly assist or induce another to do so, or do so through the acts of another[.]" MLRPC 8.4(a).

Here, clear and convincing evidence supports the hearing judge's conclusion that Geesing violated MLRPC 8.4(a). As discussed above, Geesing violated MLRPC 3.3(a)(1), 5.3(a), and 8.4(d).

### B. Sanction

Bar Counsel recommends that we suspend Geesing from the practice of law in Maryland for ninety days.[8] Geesing responds that we should reprimand him.

■ In *Dore*, 433 Md. at 717, 73 A.3d at 180, this Court stated:

> When we impose sanctions, our goal is not to punish the [lawyer], but rather to protect the public and the public's confidence in the legal profession [and] to deter other lawyers from violating the [MLRPC]. To achieve this goal, the sanction should be commensurate with the nature and the gravity of the [lawyer's] misconduct and the intent with which it was committed. In determining an appropriate sanction, we often refer to the American Bar Association's *Standards for Imposing Lawyer Sanctions*, which focus on the nature of the ethical duty violated, the lawyer's mental state, the extent of the actual or potential injury caused by the lawyer's misconduct, and any aggravating or mitigating [factor]s.

(Second alteration in original) (citations and internal quotation marks omitted).

---

8. In its written recommendation for sanction, the Commission recommended that we indefinitely suspend Geesing from the practice of law in Maryland with the right to apply for reinstatement no sooner than six months after the effective date of the suspension. At oral argument, the Commission stated that it had changed its recommended sanction in light of this Court's opinion in *Dore*, 433 Md. 685, 73 A.3d 161.

As to the nature of the ethical duty violated, by "robo-signing" a large number of documents—including falsely notarized affidavits—in foreclosure filings, Geesing: (1) made false statements of fact to tribunals; (2) instructed non-lawyer members of BWW Law's staff to engage in conduct that was incompatible with Geesing's professional obligations; and (3) engaged in conduct that negatively impacted the efficacy of the courts and the public's perception of the legal profession.

■ As to Geesing's mental state, Geesing filed affidavits that he knew to have been falsely notarized. Although Geesing believed that it was legal to authorize the staff members to sign documents in foreclosure filings, he had no reason to believe that a notary public could properly notarize a document that was not signed in the notary public's presence.

As to the actual or potential injury that Geesing's misconduct caused, Geesing's misconduct negatively impacted the efficacy and efficient operation of the courts and the public's perception of the legal profession.

We note two aggravating factors: (1) Geesing showed "a pattern of misconduct" by authorizing signatures in at least 2,500 foreclosure actions over the course of fifteen months; [9] and (2) Geesing committed "multiple offenses" (at least 2,500 of them). *Attorney Grievance Comm'n v. O'Leary*, 433 Md. 2, 41, 69 A.3d 1121, 1144 (2013).

The following constitute mitigating factors:

Absence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional problems; timely good faith efforts to make restitution or to rectify consequences of misconduct; full and free disclosure to [the Commission] or cooperative attitude toward [the attorney discipline] proceeding[ ]; inexperience in the practice of law;

---

**9.** We reject Geesing's contention that he did not show a pattern of misconduct because he neither intended to deceive, nor realized what he was doing was improper. Geesing robo-signed affidavits in at least 2,500 foreclosure actions over the course of fifteen months. This clearly shows a "pattern of misconduct," regardless of whether Geesing's misconduct was intentional or negligent.

character or reputation; physical or mental disability or impairment; delay in [the attorney] disciplin[e] proceeding[ ]; interim rehabilitation; imposition of other penalties or sanctions; remorse; and finally, remoteness of prior offenses.

*Dore*, 433 Md. at 720, 73 A.3d at 181 (citation and internal quotation marks omitted).

Here, the hearing judge found seven mitigating factors. First, Geesing has no prior disciplinary record. Second, Geesing authorized the staff members to sign his name on documents in foreclosure filings because he wanted to expedite services to mortgagees, not because of a dishonest or selfish motive. Third, once Geesing no longer believed that it was legal to authorize the staff members to sign documents in foreclosure filings, Geesing made timely good-faith efforts to rectify the consequences of his misconduct. Fourth, by reporting himself to the Commission, Geesing engaged in full and free disclosure to the Commission; additionally, Geesing agreed to submit joint proposed findings of fact, and otherwise showed a cooperative attitude toward the proceedings before the hearing judge. Fifth, the hearing judge found that Geesing's "good character has led him to help those in need while protecting the interests of his clients." Sixth, as to imposition of other penalties, Geesing's misconduct: (1) cost BWW Law approximately $152,500; (2) caused significant media coverage; (3) caused three mortgagees (who had contributed one-fifth of BWW Law's foreclosure practice in Maryland) to end BWW Law's representation; and (4) prompted Geesing to encourage his partners to remove his name from BWW Law's title. Seventh, Geesing showed remorse for his misconduct, not merely because of this attorney disciplinary proceeding, but mainly because he dishonored his profession and disappointed his partners and his family, and because others may view the judicial process negatively as a result of his misconduct.

In *Dore*, 433 Md. at 727, 689, 722, 73 A.3d at 185, 163, 183, this Court suspended a lawyer from the practice of law in Maryland for ninety days where the lawyer "authorized his

employees to sign his name on" "hundreds, if not thousands," of affidavits in foreclosure filings. This Court noted that the lawyer "was at least grossly negligent" in doing so, *id.* at 719, 73 A.3d at 181 (citation, footnote, and internal quotation marks omitted), as the lawyer could not have reasonably believed that "it is a legitimate practice to have someone else sign affidavits to be filed in court." *Id.* at 718, 73 A.3d at 180. Additionally, "the injury [that the lawyer's misconduct caused] to the public in general was great, both in terms of the negative image accorded the profession as a whole and the more tangible effect on the courts' day-to-day operations." *Id.* at 719, 73 A.3d at 181. However, the following mitigating factors existed: (1) "the absence of a prior disciplinary record"; (2) "the absence of a dishonest or selfish motive"; (3) "timely good-faith efforts to make restitution or to rectify consequences of misconduct"; (4) "full disclosure ... to the [Commission] and [ ] cooperation and participation in the [attorney] discipline[e] proceeding"; (5) "good character and reputation"; (6) "remorse"; and (7) "significant press coverage of the issue and [ ] considerable time and effort that [the lawyer] and his firm [ ] spent correcting the problem[.]" *Id.* at 720, 73 A.3d at 181–82. In determining the appropriate sanction, this Court stated:

[S]ystemic violations, involving more than one client or more than one instance of misconduct, as well as misconduct that involves false signatures, are serious business. . . .

The extent of [the lawyer]'s violations and their ramifications is so great that **more th[a]n a slap on the wrist is necessary to send the message to the legal community and the public at large that this Court has no tolerance for this type of conduct, and to restore the public's trust in the legal profession.** We hold that a 90 day suspension would accomplish that goal. **We refrain from an indefinite suspension only because of the many mitigating circumstances.**

*Id.* at 726–27, 73 A.3d at 185 (emphasis added).

Here, we conclude that the appropriate sanction is to suspend Geesing from the practice of law in Maryland for ninety

days. Under *Dore, id.* at 727, 73 A.3d at 185, a ninety-day suspension from the practice of law in Maryland is the appropriate sanction where: (1) a lawyer "robo-signs" a large number of documents—including falsely notarized affidavits—in foreclosure filings; and (2) there are several mitigating factors, including (a) "the absence of a prior disciplinary record"; (b) "the absence of a dishonest or selfish motive"; (c) "timely good-faith efforts to make restitution or to rectify consequences of misconduct"; (d) "full disclosure . . . to the [Commission] and [ ] cooperation and participation in the [attorney] disciplin[e] proceeding"; (e) "good character and reputation"; (f) "remorse"; and (g) "significant press coverage of the issue and [ ] considerable time and effort that [the lawyer] and [the lawyer's] firm [ ] spent correcting the problem[.]" *Id.* at at 720, 73 A.3d at 181–82.

For two reasons, we are unpersuaded by Geesing's attempt to distinguish *Dore* on the ground that—unlike the lawyer in *Dore, id.* at 727, 73 A.3d at 185—he reviewed for accuracy all documents in foreclosure filings. First, both here and in *Dore,* aside from the allegations of robo-signing, there was no allegation that the lawyer filed any otherwise substantively inaccurate documents, *see id.* at 720, 73 A.3d at 181; nonetheless, the lawyer's "robo-signing" caused "great" "injury to the public in general . . . both in terms of the negative image accorded the profession as a whole and the more tangible effect on the courts' day-to-day operations." *Id.* at 719, 73 A.3d at 181. Thus, it is a distinction without a difference that Geesing reviewed the documents in foreclosure filings for accuracy. Second, both here and in *Dore*—regardless of the affidavits' substance—the lawyer filed affidavits that the lawyer knew (or should have known) to have been falsely notarized. *See id.* at 723, 73 A.3d at 183 ("[The lawyer] insists that he did not know his employees were notarizing the affidavits. . . . These justifications find no sympathy with this Court. The high volume of [the lawyer]'s foreclosure filings required more diligence from him, not less."). Here, it is indisputable that Geesing filed affidavits that he knew to have been falsely notarized—indeed, in contrast to the allegedly

unwitting lawyer in *Dore, id.* at 723, 73 A.3d at 183, Geesing instructed two members of BWW Law's staff to falsely notarize the affidavits.

For the above reasons, we suspend Geesing from the practice of law in Maryland for ninety days. The suspension shall begin thirty days after the date on which this opinion is filed.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761. JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST GEORGE JACOB GEESING IN THE SUM OF THESE COSTS.**

ADKINS, J., concurs and dissents.

ADKINS, J., concurring and dissenting.

I concur with the majority opinion except with respect to its rejection of the distinction drawn by Respondent that, in contrast to Mr. Dore, he testified, and the hearing judge found, that he reviewed each affidavit before his staff person signed his name. In *Attorney Grievance Comm'n of Maryland v. Dore,* there was no such testimony. 433 Md. 685, 73 A.3d 161 (2013). Although both attorneys violated the same Rules of Professional Conduct, in my view, Geesing's conduct was less culpable. When a lawyer reviews each affidavit and approves its specific content, the lawyer knows the substance, including exact detail, of what will be presented to the court as his oath. This differs qualitatively, in my view, from Dore's more general delegation to non-lawyer office staff to sign his name on affidavits to be filed in court.

Nevertheless, given the high volume of these flawed mortgage affidavits, and the negative impact on the legal profession caused by public perception of the Bar as having a cavalier attitude towards the very serious responsibility of filing affidavits in foreclosure actions, I would suspend Geesing for 60 days.