## ATTORNEY GRIEVANCE COMMISSION OF MARYLAND v. RONALD S. GOLDBERG

[Misc. (BV) No. 11, September Term, 1981.]

*Decided February 23, 1982.*

The cause was argued before SMITH, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ., and J. DUDLEY DIGGES, Associate Judge of the Court of Appeals (retired), specially assigned.

*Melvin Hirshman, Bar Counsel,* with whom was *Glenn M. Grossman, Assistant Bar Counsel,* on the petition, for petitioner.

*Melvin G. Bergman,* with whom was *Neil Edward Axel* on the answer, for respondent.

Smith, J., delivered the opinion of the Court. Davidson, J., would have reprimanded.

Bar Counsel, acting pursuant to the provisions of Maryland Rule BV9, filed a petition with us on behalf of the Attorney Grievance Commission seeking disciplinary action against Ronald S. Goldberg, a member of the Maryland bar. The petition alleged sixteen instances of professional misconduct which essentially involved neglect. Pursuant to Rule BV9 b, we referred the matter for hearing to a judge of the Circuit Court for Montgomery County. He made the following findings of fact after hearings that consumed three days:

> "There is little, if any, dispute by the Respondent, Ronald S. Goldberg, that in each of the sixteen incidences he was retained as an attorney to perform legal services on behalf of a client. This Court will not go through each complaint separately because the real issue is not what occurred but what caused the failure of representation with respect to each of the complaints.

> "The Respondent, Ronald S. Goldberg, has been in the practice of law since his admission to the Bar of this Court on October 20, 1961. At the time that he entered into an attorney-client relationship with the subjects of these complaints, Mr. Goldberg was operating a legal clinic. Sometime in 1978, upon the recommendation of one of his clients, he hired Sandra H. Ofterdinger ... as a secretary. Subsequent to her hiring, Mrs. Ofterdinger was given increasing responsibilities, resulting in her position in the nature of an office manager. She had the responsibility to see that the pleadings were prepared from Mr. Goldberg's dictation, the cases properly filed, dates appropriately calendared, the keeping of the financial books and records, and

authority to sign checks for disbursements from the office account and clients' trust account.

"There came a time while in the employment of Mr. Goldberg that Mrs. Ofterdinger failed to prepare the necessary pleadings, documents or papers required to be done. As she got increasingly behind, she would remove the files and not calendar them, preventing the lack of progress on those files from coming to the attention of Mr. Goldberg. In order to cover her inactivity on these files, Mrs. Ofterdinger then started going through all of the office mail, removing any letters that had reference to the work that had not been done. She also removed any phone messages and intercepted calls to Mr. Goldberg. She made excuses or misrepresentations as to why the work had not been done in some instances and falsely represented that the work had been done in others. Checks received from clients were not deposited in the appropriate account, and from the exhibits it would appear that unauthorized checks were drawn by Mrs. Ofterdinger for improper purposes. She further intercepted the letters from the Attorney Grievance Commission.

"From the testimony presented, there is no evidence that Respondent, Ronald S. Goldberg, was aware of any of the activity of Mrs. Ofterdinger until the time of her termination. None of the misrepresentations to clients were authorized by Mr. Goldberg. As soon as he became actually aware of what had occurred, Mr. Goldberg attempted to locate all of the removed or hidden files, contact the clients, and rectify the situation where possible. One might question whether an attorney can give effective representation to all of his clients with the volume that Mr. Goldberg has undertaken. There is, however, no indication that volume or improper delegation was a contributing factor in any of the incidents the subject of this complaint.

"For the aforegoing reasons, this Court finds that there was no knowing violation of the Code of Professional Responsibility by Respondent, Ronald S. Goldberg."

Testimony adduced before Judge Cave included the fact that there were instances in which deeds were not recorded and pleadings were not timely filed; that disbursement was not promptly made on sums collected for the account of clients; that the gross income of Goldberg was in excess of $12,000 per month from legal fees; that his escrow account showed negative balances from time to time; that Goldberg never examined monthly bank statements; that at the time Mrs. Ofterdinger came to work for Goldberg she was on probation in the District of Columbia as a result of embezzling funds from a title company there; that in an earlier incident she had misappropriated funds from yet another title company, which did not bring criminal charges because of its desire to avoid publicity; that when Goldberg ultimately terminated the services of Mrs. Ofterdinger as a result of his investigations following a fellow employee's complaints to him, undeposited checks totaling more than $11,000 were located; and that among the items found in that investigation were unopened communications from the Attorney Grievance Commission of Maryland.

Given this testimony, we make one further observation before proceeding with our review of the Commission's petition which is now before us. When we note the prior background of Mrs. Ofterdinger, we do not mean to imply that she should not necessarily have been hired by Goldberg. We do suggest, however, that had Goldberg been aware of her background he might have supervised her duties in a different manner.

Bar Counsel filed exceptions to the findings of fact and conclusions of law of the trial judge. He contended relative to certain of the complaints that there was clear and convincing evidence to support a conclusion that Goldberg

had violated Disciplinary Rules 6-101 (A) (3), 7-101 (A) (1), (2), and (3), and 9-102 (B) (3), and (4).[1]

During most of the time in question, Goldberg appears to have had not more than two clerical employees. During a part of the time he had another attorney in the office. Of course, it may be that the clerical staff had too much volume to handle. Goldberg testified that the messages he received "would average a hundred calls a day." The manager of the bank whose office was on the first floor of the building in which Goldberg's office was located testified relative to the telephones when she visited Goldberg's office, saying:

---

**1.** The disciplinary rules in question read as follows:

"DR 6-101   Failing to Act Competently.
(A) A lawyer shall not:
   (1) . . .
   (2) . . .
   (3) Neglect a legal matter entrusted to him.
"DR 7-101   Representing a Client Zealously.
(A) A lawyer shall not intentionally:
   (1) Fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules, except as provided by DR 7-101(B). A lawyer does not violate this Disciplinary Rule, however, by acceding to reasonable requests of opposing counsel which do not prejudice the rights of his client, by being punctual in fulfilling all professional commitments, by avoiding offensive tactics, or by treating with courtesy and consideration all persons involved in the legal process.
   (2) Fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under DR 2-110, DR 5-102, and DR 5-105.
   (3) Prejudice or damage his client during the course of the professional relationship, except as required under DR 7-102 (B).
"DR 9-102   Preserving Identity of Funds and Property of a Client.
(A) . . .
(B) A lawyer shall:
   (1) . . .
   (2) . . .
   (3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of a lawyer and render appropriate accounts to his client regarding them.
   (4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive."

"A. Well, I noticed on many occasions that they have the phones like we do where there are four lines coming through. You would see them all lit up on hold. I just noticed it because you notice it from being at work and it was extremely busy but normally nobody was on the phones."

Goldberg said on this subject:

"A. Kansada [, an employee,] brought to my attention and I noticed this myself that the lines were busy all the time. Sometimes I would call from court or out of the office. I could never get through. At first I didn't give it a second thought. I figured, well, we are just busy. We had five or six lines at that time and they were tied up.

"Then when I came in one day unexpectedly and I found the shades were drawn in the office and the TV set was on Ms. Heckner's desk and the phones were all lit up and no one was on the phones. I asked, 'What the hell was going on?' It was a work day. She said, 'Well, I was trying to get caught up. I was too busy. I put all the phones on hold so no one could call in.' I said, 'Let me tell you something. Don't ever do that again.' "

Mrs. Ofterdinger (formerly Heckner) testified:

"A. I would not say it was all my fault. I would say some of it probably was, yes, sir. I was one person. I had an awful lot put on me and it just got to the point where it overwhelmed me. I guess I made a bad judgment. I am very sorry about that."

At the very least there was clear and convincing evidence to support a conclusion that Goldberg violated DR 6-101 (A) (3) relative to neglect of a legal matter entrusted to him. The trial judge was clearly in error in not finding a violation of that disciplinary rule. An attorney may not escape responsibility to his clients by blithely saying that any shortcomings are solely the fault of his employee. He has

a duty to supervise the conduct of his office. A very telling aspect here is that although at one time the escrow account showed an overdraft of nearly $40,000 (possibly brought about by Mrs. Ofterdinger's apparent tardiness in depositing a check), Goldberg was unaware of this because he never at any time took the simple precaution of running his eye over bank statements at the end of the month.

Testimony was adduced from the branch manager of the bank where Goldberg's escrow account was maintained, the same individual to whom we have referred as being in the same building as Goldberg. The branch manager described how this account was overdrawn to the extent of $2,000 which "did not get covered for several months." She explained relative to her requests to Goldberg's secretary for deposits. The record then reflects:

"Q. At what point did you terminate not covering the overdrafts?

"A. One account stayed overdrawn for about two months or longer. I would repeatedly go upstairs and ask for a deposit and got nothing. I had never seen Mr. Goldberg. I had seen his car because of his tags.

"The assistant manager now who is the head teller spotted him walking towards his office one day and said, 'That is Mr. Goldberg.' I ran out to catch him to say, 'Hey, you have got to clean up this overdraft', at which time he said he would talk to Ms. Heckner [, now Mrs. Ofterdinger,] and get it cleaned up. A week later it was not and I just started bouncing checks. I guess about three days after I started bouncing checks Mr. Goldberg came in. I explained to him that she had not cleaned it up.

"From that point on we have been all right."

Two of the complaints are of particular significance. They do not involve such routine items as recordation of instruments which one might entrust to a secretary. The first such complaint involved Donald Hurdle, who consulted Goldberg

relative to the repair of a truck. Suit was to be brought upon receipt of a fee of $350. Although Goldberg concedes payment of the fee, suit was never filed. In the second incident, Donna Sgaggero retained Goldberg to file an answer in a divorce proceeding against her in Garrett County. When the answer was not filed, a decree pro confesso was entered against her. The record of Goldberg's explanation is illuminating:

> "Q. The answer to the bill of complaint in Garrett County, the answer is not in the file. Have you given instructions to anybody to prepare that answer?

> "A. It would have been done at the same time I would have done the other items.

> "Q. Did you leave any instructions with regard to the signing and filing of those pleadings?

> "A. Yes, I have a work order which would have been the procedure in the office. It is directed to S. H. from me, type and prepare file and log, a petition, ask for child support of $200 a month and alimony of $100 a month plus attorney's fees.

> "It had down the date of the order was 11/28. It was to be done by 12/6/79. We have a 'rush' on there in a circle.

> "Q. Now after your first visit with Mrs. Sgaggero, did you have any further contact with her or when was your next contact with her?

> "A. I didn't know anything more about Mrs. Sgaggero until we found these bar complaints with the other items when we had gone into the closed file room."

An attorney knows that his personal signature is required on court pleadings. Rule 302 a requires, "A pleading of a party represented by an attorney shall be signed by at least one attorney of record in his individual name . . . ." Rule 302 b then says in pertinent part, "The signature of an attorney of record to a pleading shall constitute a certificate of such

attorney that he has read such pleading ....." Thus, we construe the rule and the predecessor provision to 302 b found in Code (1951) Art. 16, § 185 as requiring that at least one attorney must personally sign each pleading. It was incumbent upon Goldberg to make inquiry when these matters did not cross his desk for his signature.

We are advised there have been no previous complaints against Goldberg. We are further advised that Goldberg has overhauled his office and, among other things, has brought in his wife to oversee operations in an effort to avoid any recurrence of incidents similar to those now before the Court. Additionally, we are advised that he otherwise has been regarded as a competent attorney.

We understand the difficulties of a busy solo practitioner, which is what Goldberg was during most of this time. We also understand that one cannot watch every single thing which takes place in his office. It would appear here, however, that Goldberg just did not adequately supervise his employee. He is fortunate, under the circumstances, that there appears to have been no actual loss to his clients by virtue of the negative balances in his escrow account.

Nonetheless, the public must be protected. Lawyers must be impressed with the fact that at all times they have a responsibility to their clients. This responsibility necessarily includes adequate supervision of their employees.

Goldberg asserts that no sanction should be imposed because the problem here stemmed from the activities of his employee. Bar Counsel on the other hand suggests a reprimand. We are of the view that we cannot discharge our responsibility to protect the public by merely giving a reprimand.

We conclude, therefore, that the proper sanction to be imposed here, taking into account the nature and number of incidents here involved and Goldberg's prior unblemished record, is a suspension of thirty days. Accordingly, Ronald S. Goldberg shall stand suspended from the practice of law in this State for the period of thirty days accounting from thirty days after the filing of this opinion. He shall stand sus-

pended beyond that date unless and until all costs incurred in connection with this proceeding are paid in full.

> *It is so ordered, respondent shall pay all costs as taxed by the Clerk of this Court, including the costs of transcripts, pursuant to Maryland Rule BV15 c for which sum judgment is entered in favor of the Attorney Grievance Commission against Ronald S. Goldberg.*

*Judge Davidson would have reprimanded.*