542 A.2d 841

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Edward Anthony DACY.**

Misc. (Subtitle BV) No. 5, Sept. Term, 1987.

Court of Appeals of Maryland.

June 15, 1988.

Melvin Hirshman, Bar Counsel, Attorney Grievance Com'n of Maryland, and Robert P. Conrad, Asst. Bar Counsel for the Attorney Grievance Com'n of Maryland, for petitioner.

Barry H. Helfand, Rockville, for respondent.

Argued before ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS, BLACKWELL, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals of Maryland (retired), Specially Assigned.

**2**

PER CURIAM.

The Attorney Grievance Commission, by Bar Counsel, filed a petition for disciplinary action against Edward Anthony Dacy, alleging violations of the Maryland Code and of the disciplinary rules of the Code of Professional Responsibility. Pursuant to Maryland Rule BV9(b), we referred the matter to Judge J. James McKenna of the Circuit Court for Montgomery County.

The facts, as disclosed by the record and the circuit judge's findings, are as follows. The respondent, a member of the Bar of this Court since 1964, frequently represented First Maryland Savings and Loan Association in real estate settlement matters.[1] In transactions in which the respondent represented First Maryland, the savings and loan had agreed that, before the date of a closing, it would directly deposit the requisite funds into the respondent's client escrow account at Maryland National Bank. During 1983, however, the respondent learned that on several occasions First Maryland had failed to make the deposits in a timely fashion. In order to ensure that future closings would be funded on time, the respondent directed one of his employees to make more satisfactory arrangements with First Maryland. The employee, Ms. McNeill, was not an attorney; nor, apparently, did she receive any specific instructions from the respondent.

At First Maryland's suggestion, Ms. McNeill agreed to a system under which the savings and loan would deposit a check for the requisite amount into the respondent's personal, interest-bearing checking account at First Maryland. Immediately thereafter, Ms. McNeill would write a check, on the respondent's personal account, payable to the client escrow account at Maryland National Bank. Later in 1983, Ms. McNeill established a separate, interest-bearing office account at First Maryland in the name of Dacy & Associ-

---

1. The respondent was also a shareholder and director of First Maryland and a member of its Loan Committee. First Maryland was placed in receivership in November 1985.

ates, the respondent's firm. Subsequently, monies destined from First Maryland to the Maryland National escrow account would pass through this Dacy & Associates account.

The respondent's uncontradicted testimony indicates that it was not until some point after Ms. McNeill had established the Dacy & Associates account that he inquired about or learned of the particular solution which she had devised.[2]

The record also establishes that in August 1983 the respondent attended a meeting at which First Maryland, as the lender, and several other parties agreed to close a real estate transaction. The borrowers, who had accounts at First Maryland, wanted the loan proceeds to be credited immediately to their accounts. Consequently, the parties considered it impractical first to deposit the amount of the loan into the respondent's escrow account at Maryland National Bank and then to authorize a disbursement out of the escrow account. Instead, First Maryland's president proposed that the money be deposited in the respondent's personal account and that the respondent then disburse the amount of the loan from that account to the borrowers. The respondent agreed to do so. According to his testimony before Judge McKenna, he believed that, because he had the consent of all parties involved, his conduct would not violate any statute or disciplinary rule. In response to a question by Bar Counsel, the respondent admitted that, on this occasion, he knowingly had clients' money placed in his personal account.

It is undisputed that none of the respondent's clients suffered any losses as a result of his conduct.

Based on the foregoing evidence, the circuit court found that the respondent had commingled client funds with his personal funds. In addition, however, the court found that

---

**2.** The respondent testified that he could not "recollect ... with specificity" the exact date on which Ms. McNeill provided him with this information. In addition, the record does not clearly indicate whether Ms. McNeill volunteered this information or whether the respondent actually inquired about it.

**4**

such commingling was inadvertent, although, the court added, it was "inadvertence of a rather extraordinary nature." Finally, the circuit court concluded that, because of his conduct, the respondent had violated Maryland Code (1957, 1987 Repl.Vol.), Art. 10, § 44(a)(1),[3] DR 9-102(A),[4] and DR 1-102(A)(1) and (6).[5]

Bar Counsel has excepted to the circuit court's finding that the respondent's conduct was inadvertent. According to Bar Counsel, "[t]he clear and convincing evidence shows

---

3. Art. 10, § 44, provides in pertinent part as follows:
*"Duty of Attorney.*
(a)(1) If any attorney is entrusted with, or receives and accepts, or otherwise holds, deposit moneys or other trust moneys, of whatever kind or nature, such moneys, in the absence of court order to the contrary shall be expeditiously deposited in an account or accounts maintained as a separate account or accounts for funds belonging to others. In no event shall the attorney commingle any such funds with such attorney's funds or use any such funds for any purpose other than the purpose for which they were entrusted to the attorney."
\* \* \* \* \* \*

4. Former DR 9-102(A) stated:
"Preserving Identity of Funds and Property of a Client.
(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
(1) Funds reasonably sufficient to pay bank charges may be deposited therein.
(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved."

5. Former DR 1-102(A) provided in pertinent part as follows:
"Misconduct.
(A) A lawyer shall not:
(1) Violate a Disciplinary Rule.
\* \* \* \* \* \*
(6) Engage in any other conduct that adversely reflects on his fitness to practice law."

that the Respondent did have scienter." [6]

As to Ms. McNeill's purported solution to the difficulties with First National, there is abundant evidence that the respondent acted negligently. Indeed, he concedes as much. Had the respondent given Ms. McNeill reasonably specific instructions, it is clear that the problems with First Maryland might have been solved by creating an escrow account at that savings and loan. Moreover, had the respondent exercised a reasonable degree of supervision over Ms. McNeill, he might have detected her error before any ethical proscriptions had been violated.

Nonetheless, the respondent's uncontradicted testimony indicates that, in this regard, he did not intend to violate any ethical principle and that his conduct was the product of negligence. The circuit judge expressly found the respondent to be a credible witness.

By the respondent's own admission, however, he acted knowingly and not inadvertently when, at the August 1983 closing, he temporarily deposited client funds in his personal account. Thus, as to the commingling that occurred as a result of that decision, we hold that the circuit court's finding of inadvertence was clearly erroneous, and we sustain Bar Counsel's exception.

By way of a sanction, the respondent suggests that a reprimand would be appropriate. On the other hand, Bar Counsel recommends a three-month suspension. Bar Counsel argues, however, that our decision in *Attorney Grievance Commission v. Goldberg*, 292 Md. 650, 441 A.2d 338 (1982), is similar to the instant case. In *Goldberg, supra,* the attorney did not adequately supervise his office manager, who negligently performed her duties. As a result, the

---

6. Initially, Bar Counsel had also charged respondent with a failure to maintain adequate records concerning interest earned on client funds that were deposited in his personal and business accounts. The trial court concluded that this charge had been proved, but found respondent's actions to have been inadvertent. Bar Counsel does not press this charge and now characterizes this proceeding as a "pure commingling case."

attorney's escrow account became overdrawn. Also, in *Goldberg*, important pleadings were never filed. On the basis of these facts, we concluded that the proper sanction was a 30–day suspension.

As in *Goldberg*, the prior record of the respondent in the case at bar is unblemished. Moreover, as in *Goldberg*, the respondent changed his office procedures when the problems came to his attention. In addition, none of the respondent's clients were injured as a result of any of his actions. Consequently, we conclude that the appropriate sanction in this case is a 30–day suspension.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE BV 15 c, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST EDWARD ANTHONY DACY.