Attorney Grievance Comm'n v. Matthew John McDowell & John Stephen Burson, Misc. Docket AG No. 50, September Term, 2012

**ATTORNEY DISCIPLINE – SANCTIONS – REPRIMAND –** Court of Appeals reprimanded lawyer who "robo-signed" large number of foreclosure-related documents. Such conduct violated Maryland Lawyers' Rules of Professional Conduct ("MLRPC") 8.4(d) (Conduct That Is Prejudicial to Administration of Justice) and 8.4(a) (Violating MLRPC).

**ATTORNEY DISCIPLINE – SANCTIONS – REPRIMAND –** Court of Appeals reprimanded managing partner who made no efforts to ensure that law firm had in effect measures giving reasonable assurance that lawyers did not robo-sign documents and that notaries public did not falsely notarize documents. Such conduct violated MLRPC 5.1(a) (Responsibilities of Partners, Managers, and Supervisory Lawyers), 5.3(a) (Responsibilities Regarding Nonlawyer Assistants), and 8.4(a) (Violating MLRPC).

Circuit Court for Montgomery County
Case No. 28110-M

Argued: April 29, 2014

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 50

September Term, 2012
_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

MATTHEW JOHN MCDOWELL & JOHN
STEPHEN BURSON
_____

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

_____

Opinion by Watts, J.

_____

Filed:  June 19, 2014

This attorney discipline proceeding involves a lawyer who "robo-signed" a large number of foreclosure-related documents,[1] and the managing partner of the law firm at which the robo-signing occurred.

While John Stephen Burson ("Burson"), Respondent, a member of the Bar of Maryland, was the managing partner of the law firm that is now Shapiro Brown & Alt, LLP ("the Shapiro Firm"),[2] Matthew John McDowell ("McDowell"), Respondent, a member of the Bar of Maryland and a lawyer at the Shapiro Firm, signed trustee's deeds[3] and affidavits on behalf of William M. Savage ("Savage"), another lawyer and partner at the Shapiro Firm. At the Shapiro Firm, paralegals (who were also notaries public) notarized the trustee's deeds and affidavits. Although McDowell had signed the trustee's deeds and affidavits outside the paralegals' presence, the notary jurats stated that the trustee's deeds and affidavits had been signed in the paralegals' presence. The robo-signing and notarizations at the Shapiro Firm came to the attention of the Attorney

---

[1] "'Robo-signing' most often refers to the process of mass-producing affidavits for foreclosures without having knowledge of or verifying the facts. 'Robo-signing' may also refer to the mass-production of affidavits that the affiant did not sign." Attorney Grievance Comm'n v. Geesing, 436 Md. 56, 58 n.1, 80 A.3d 718, 719 n.1 (2013) (quoting Attorney Grievance Comm'n v. Dore, 433 Md. 685, 688-89, 711, 73 A.3d 161, 163, 176 (2013) (ellipsis and some internal quotation marks omitted). As discussed below, this attorney discipline proceeding involves the latter type of robo-signing.

[2] The Shapiro Firm was originally named "Shapiro & Burson"; later became "Shapiro & Burson, LLP"; and still later became "Shapiro Brown & Alt, LLP."

[3] Through a trustee's deed, a substitute trustee conveys title of a foreclosed property to the entity that purchased the foreclosed property at a foreclosure sale. After a trial court ratifies the foreclosure sale, the trustee's deed is recorded among the land records. "[A]ny failure [by the trustee's deed] to comply with [] formal requisites[,]" such as an improper affidavit of consideration, "has no effect unless [the trustee's deed] is challenged in a judicial proceeding commenced within six months after [the trustee's deed] is recorded." Md. Code Ann., Real Prop. (1974, 2010 Repl. Vol.) § 4-109(b).

Grievance Commission ("the Commission"), Petitioner.

On October 17, 2012, on the Commission's behalf, Bar Counsel filed in this Court a "Petition for Disciplinary or Remedial Action" against Burson and McDowell, charging Burson with violating Maryland Lawyers' Rule of Professional Conduct ("MLRPC") 5.1 (Responsibilities of Partners, Managers, and Supervisory Lawyers) and 5.3 (Responsibilities Regarding Nonlawyer Assistants); charging McDowell with violating MLRPC 5.2(a) (Responsibilities of a Subordinate Lawyer);[4] and charging Burson and McDowell with violating MLRPC 1.1 (Competence) and 8.4 (Misconduct).

On October 22, 2012, this Court designated the Honorable Marielsa A. Bernard ("the hearing judge") of the Circuit Court for Montgomery County to hear this attorney discipline proceeding. On July 9, 2013, the hearing judge conducted a hearing. On September 27, 2013, the hearing judge filed in this Court an opinion including findings of fact and conclusions of law that McDowell had not violated any MLRPC and that Burson: had violated MLRPC 5.1(a) and 5.3(a); had not violated MLRPC 1.1, 5.3(b), or 8.4;[5] was not vicariously responsible for McDowell's conduct under MLRPC 5.1(c); and

---

[4]MLRPC 5.2(a) states: "A lawyer is bound by the [MLRPC] notwithstanding that the lawyer acted at the direction of another person." In other words, MLRPC 5.2(a) establishes that it is not a defense to a violation of another MRLPC that a lawyer was following orders. Thus, technically speaking, a lawyer cannot violate MLRPC 5.2(a) itself.

[5]The hearing judge did not determine whether Burson had violated MLRPC 5.1(b); the hearing judge stated that, in the Petition for Disciplinary or Remedial Action, the Commission did "not allege that [] Burson failed to supervise [] Savage[.]" The hearing judge's statement is accurate, and the Commission does not dispute that it did not charge Burson with violating MLRPC 5.1(b). Thus, below, we do not determine whether Burson violated MLRPC 5.1(b).

was not vicariously responsible for the paralegals' conduct under MLRPC 5.3(c).

On April 29, 2014, we heard oral argument. For the below reasons, we reprimand Burson and McDowell.

## BACKGROUND

In her opinion, the hearing judge found the following facts, which we summarize.

In 1985, this Court admitted Burson to the Bar of Maryland. In June 1985, Burson helped form the Shapiro Firm, which represented mortgagees in foreclosure actions in Maryland and Virginia. Burson was the Shapiro Firm's managing partner.

On December 12, 2001, this Court admitted McDowell to the Bar of Maryland. In 2009 (for present purposes), McDowell began working for the Shapiro Firm.[6] Savage was McDowell's supervisor. At Savage's direction and over the relevant period of time, McDowell reviewed for accuracy trustee's deeds and affidavits in approximately 900 foreclosure actions and signed the trustee's deeds and affidavits on Savage's behalf. The affidavits contained averments regarding facts that trial courts had already found (*e.g.*, that the mortgagors were not serving in the military). McDowell had the legal knowledge that was reasonably necessary to review for accuracy the trustee's deeds and affidavits. McDowell was conscientious in reviewing for accuracy the trustee's deeds and affidavits; McDowell did not make any errors in doing so, and none of the trustee's deeds were defective or challenged in court. McDowell believed (albeit mistakenly) that it was not improper to sign trustee's deeds and affidavits on Savage's behalf. Burson neither

---

[6]McDowell had previously worked for the Shapiro Firm from January 2002 through September 2004.

ordered nor ratified McDowell's conduct.

At the Shapiro Firm, paralegals (who were also notaries public) notarized the trustee's deeds and affidavits that McDowell had signed on Savage's behalf. Although McDowell had signed the trustee's deeds and affidavits outside the paralegals' presence, the notary jurats stated that the trustee's deeds and affidavits had been signed in the paralegals' presence. Burson neither ordered nor ratified the paralegals' conduct; at the hearing, Burson testified that he believed that the notarizations at the Shapiro Firm did not violate Virginia law.[7]

Sometime in or before 2010, two other lawyers at the Shapiro Firm signed each other's names on foreclosure-related documents. Various circuit courts issued show cause orders regarding the lawyers' signatures.

In 2011, Burson learned that McDowell had signed trustee's deeds and affidavits on Savage's behalf outside the paralegals' presence. Until then, Burson had made no efforts to ensure that the Shapiro Firm had in effect measures giving reasonable assurance that lawyers did not robo-sign documents and that paralegals did not falsely notarize documents. After learning that McDowell had signed trustee's deeds and affidavits on

---

[7]Va. Code Ann. § 55-118.3 (1970) states:

> The person taking an acknowledgment shall certify that: (1) The person acknowledging appeared before him and acknowledged he executed the instrument; and (2) The person acknowledging was known to the person taking the acknowledgment or that the person taking the acknowledgment had satisfactory evidence that the person acknowledging was the person described in and who executed the instrument.

(Paragraph breaks omitted).

Savage's behalf outside the paralegals' presence, Burson made timely good faith efforts to rectify the misconduct's consequences and to prevent future misconduct by ensuring that McDowell's past signing of the trustee's deeds on Savage's behalf neither created any problems as to title nor necessitated that the trustee's deeds be executed again, requiring all employees at the Shapiro Firm to promise in writing that they would neither sign others' names nor allow others to sign their names, and requiring all notaries public at the Shapiro Firm to promise in writing that they would not violate laws regarding notarizations.

Burson is respected for his integrity. As a result of the robo-signing at the Shapiro Firm, Burson was sued, received adverse media coverage, voluntarily stopped the active practice of law, and withdrew from the Shapiro Firm, which no longer bears his name.

Burson and McDowell have never before received attorney discipline. In the matter before us, they lacked dishonest or selfish motives, were cooperative with Bar Counsel, and showed remorse.

**STANDARD OF REVIEW**

In an attorney discipline proceeding, this Court reviews for clear error a hearing judge's findings of fact, and reviews without deference a hearing judge's conclusions of law. See Md. R. 16-759(b)(2)(B) ("The Court [of Appeals] shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses."); Attorney Grievance Comm'n v. Reno, 436 Md. 504, 508, 83 A.3d 781, 783 (2014) ("[T]his Court reviews for clear error a hearing judge's findings of fact[.]" (Citations omitted)); Md. R. 16-759(b)(1) ("The Court of Appeals shall review de novo the [hearing] judge's

conclusions of law."). This Court determines whether clear and convincing evidence establishes that a lawyer violated the MLRPC. See Md. R. 16-757(b) ("The [Commission] has the burden of proving the averments of the petition [for disciplinary or remedial action] by clear and convincing evidence.").

## DISCUSSION

### (A) Findings of Fact

Burson and McDowell state that they do not except to any of the hearing judge's findings of fact.[8] The Commission excepts to the hearing judge's finding that, at the hearing, Burson testified that he believed that the notarizations at the Shapiro Firm did not violate Virginia law.

We need not rule on the exception; as Burson's counsel conceded at oral argument, the hearing judge's other findings of fact establish that the notarizations at the Shapiro Firm were false, regardless of whether Burson believed that the notarizations at the Shapiro Firm did not violate Virginia law. Specifically, the hearing judge found that, although McDowell had signed the trustee's deeds and affidavits outside the paralegals' presence, the notary jurats stated that the trustee's deeds and affidavits had been signed in

---

[8]Although Burson does not label his allegation as an exception to the hearing judge's findings of fact, Burson alleges that, before 2011, he orally forbade lawyers at the Shapiro Firm from robo-signing. Burson testified in support of this contention at the hearing, but Burson's allegation does not appear in the hearing judge's opinion; indeed, the hearing judge expressly found that, before Burson learned that McDowell had signed trustee's deeds and affidavits on Savage's behalf, "Burson did not take any preventative action" and "took no measures to ensure that [robo-signing] did not" occur. To the extent that Burson's allegation constitutes an exception to the hearing judge's findings of fact, we overrule the exception because we "give due regard to the opportunity of the hearing judge to assess the credibility of witnesses." Md. R. 16-759(b)(2)(B).

the paralegals' presence. Although Va. Code Ann. § 55-118.3 permits a notary public to notarize a document that has been signed outside the notary public's presence, Virginia law does not permit a notary public to falsely represent that a document has been signed in the notary public's presence.

### (B) Conclusions of Law

Burson does not except to any of the hearing judge's conclusions of law. Originally, McDowell did not except to any of the hearing judge's conclusions of law, but the Commission excepted to the hearing judge's conclusion that McDowell had not violated MLRPC 8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation). Later, however, McDowell and the Commission filed in this Court a "Joint Petition for Reprimand by Consent" in which McDowell and the Commission agree that McDowell violated MLRPC 8.4(d) (Conduct That Is Prejudicial to the Administration of Justice).

### MLRPC 1.1 (Competence)

"A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." MLRPC 1.1.

Here, the hearing judge was correct in concluding that clear and convincing evidence did not establish that Burson had violated MLRPC 1.1. Nothing in the hearing judge's findings of fact indicates that Burson failed to provide competent representation to any client.

The hearing judge was correct in concluding that clear and convincing evidence did not establish that McDowell had violated MLRPC 1.1. McDowell had the legal

knowledge that was reasonably necessary to review for accuracy trustee's deeds and affidavits. McDowell was conscientious in reviewing for accuracy the trustee's deeds and affidavits, and McDowell did not make any errors in doing so. Although McDowell signed the trustee's deeds on Savage's behalf, none of the trustee's deeds were defective or challenged timely in court.

### MLRPC 8.4(b) (Criminal Act)

"It is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects[.]" MLRPC 8.4(b).

It is a crime to "willfully make a false entry in a public record[.]" Md. Code Ann., Crim. Law (2002, 2012 Repl. Vol.) ("CR") § 8-606(b)(1). Additionally, it is a crime to "willfully and falsely make an oath or affirmation as to a material fact . . . in an affidavit required by any state, federal, or local law[.]" CR § 9-101(a)(2).

Here, the hearing judge was correct in concluding that clear and convincing evidence did not establish that McDowell had violated MLRPC 8.4(b). Although McDowell signed trustee's deeds and affidavits on Savage's behalf, none of the trustee's deeds were defective, and the affidavits contained averments regarding facts that trial courts had already found; thus, the signatures did not render the trustee's deeds and affidavits "false entr[ies]" under CR § 8-606(b)(1). Because the affidavits contained averments regarding facts that trial courts had already found, that McDowell signed the affidavits was obviously not "material" under CR § 9-101(a)(2) for purposes of determinations by trial courts.

**8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation)**

"It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit[,] or misrepresentation[.]" MLRPC 8.4(c).

Here, we refrain from reviewing the hearing judge's conclusion that McDowell had not violated MLRPC 8.4(c). As noted above, originally, the Commission had excepted to the hearing judge's conclusion that McDowell had not violated MLRPC 8.4(c); later, however, McDowell and the Commission filed in this Court the Joint Petition for Reprimand by Consent, which contains a stipulation that McDowell violated MLRPC 8.4(d) (Conduct That Is Prejudicial to the Administration of Justice), but does not contain a stipulation that McDowell violated MLRPC 8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation). At oral argument, Bar Counsel stated that the Commission had not officially withdrawn its exception to the hearing judge's conclusion that McDowell had not violated MLRPC 8.4(c). Nonetheless, Bar Counsel made it clear that the Commission recommends that we reprimand McDowell based on his violation of MLRPC 8.4(d), regardless of any conclusion as to whether McDowell also violated MLRPC 8.4(c). At oral argument, McDowell's counsel advised that he believed that the Commission had withdrawn its exception to the hearing judge's conclusion that McDowell had not violated MLRPC 8.4(c).

Although we acknowledge the position that Bar Counsel took at oral argument, it is highly unlikely that McDowell would have conceded that he had violated MLRPC 8.4(d) (which the hearing judge concluded that McDowell had not violated) had McDowell not believed that the Commission had withdrawn its exception to the hearing

judge's conclusion that he had not violated MLRPC 8.4(c). For purposes of our review, we are satisfied that—by filing the Joint Petition for Reprimand by Consent based only on a violation of MLRPC 8.4(d), regardless of the outcome of any exception to the hearing judge's conclusion that McDowell had not violated MLRPC 8.4(c)—the Commission has essentially engaged in a *de facto* withdrawal of its exception to the hearing judge's conclusion that McDowell had not violated MLRPC 8.4(c). Although this Court has the discretion to do so, "[o]rdinarily, we will not look for additional violations where [the Commission] filed no exceptions." Attorney Grievance Comm'n v. Geesing, 436 Md. 56, 63 n.6, 80 A.3d 718, 722 n.6 (2013) (alteration in original) (quoting Attorney Grievance Comm'n v. Dore, 433 Md. 685, 707, 73 A.3d 161, 174 (2013)). For example, in Geesing, 436 Md. at 63 n.6, 80 A.3d at 722 n.6, and Dore, 433 Md. at 707, 73 A.3d at 174, attorney discipline proceedings that involved robo-signing, this Court refrained from reviewing hearing judges' conclusions that lawyers had not violated MLRPC 8.4(c) where the Commission did not except to the same. Consistent with Geesing and Dore, here, we refrain from reviewing the hearing judge's conclusion that McDowell had not violated MLRPC 8.4(c).

### MLRPC 8.4(d) (Conduct That Is Prejudicial to the Administration of Justice)

"It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice[.]" MLRPC 8.4(d). Generally, a lawyer violates MLRPC 8.4(d) where the lawyer's conduct negatively "impacts . . . the public's perception . . . of the . . . legal profession." Geesing, 436 Md. at 65, 80 A.3d at 723 (quoting Dore, 433 Md. at 696, 73 A.3d at 167) (internal quotation marks omitted).

For example, in Geesing, 436 Md. at 65, 58, 80 A.3d at 723, 719, this Court held that a lawyer had violated MLRPC 8.4(d) by "negative[ly] impact[ing] . . . the public's perception of the legal profession" where the lawyer had "authorized [staff members] . . . to sign his name on documents—including affidavits—in foreclosure filings[, and had] instructed the staff members (who were also notaries public) to notarize the affidavits, even though he had not signed them." This Court noted that the robo-signing had, among other consequences, "caused significant media coverage" and "prompted certain mortgagors to file several lawsuits arising out of the robo-signing against" the lawyer and the law firm. Id. at 65, 80 A.3d at 723.

Here, the hearing judge was correct in concluding that clear and convincing evidence did not establish that Burson had violated MLRPC 8.4(d). Burson did not participate in, or know of, the robo-signing at the Shapiro Firm. Thus, Burson's conduct is distinguishable from that of the lawyer who participated in robo-signing in Geesing, id. at 58, 80 A.3d at 719. The sole basis for concluding that Burson violated MLRPC 8.4(d) would be that he made no efforts to ensure that the Shapiro Firm had in effect measures giving reasonable assurance that lawyers did not robo-sign documents and that notaries public did not falsely notarize documents. Although, under some circumstances, a supervisor's failure to take reasonable preventative measures may constitute a violation of MLRPC 8.4(d), here, the existence of this circumstance alone, where Burson was unaware of McDowell's and the paralegals' conduct, is insufficient to establish a violation of MLRC 8.4(d).

Clear and convincing evidence persuades us to reverse the hearing judge's

conclusion that McDowell had not violated MLRPC 8.4(d). Paramount to this conclusion, as noted above, is the circumstance that McDowell concedes that he violated MLRPC 8.4(d). McDowell signed trustee's deeds and affidavits on Savage's behalf.[9] Once it became public knowledge, the robo-signing at the Shapiro Firm prompted adverse media coverage and a lawsuit against the Shapiro Firm. Cf. Geesing, 436 Md. at 65, 80 A.3d at 723 (This Court held that a lawyer had violated MLRPC 8.4(d) where the lawyer had participated in robo-signing that had "caused significant media coverage" and "prompted certain mortgagors to file several lawsuits arising out of the robo-signing against" the lawyer and the law firm.). Thus, McDowell's conduct negatively impacted the public's perception of the legal profession.

**MLRPC 5.1 (Responsibilities of Partners, Managers, and Supervisory Lawyers)**

MLRPC 5.1 states:

(a) A partner . . . shall make reasonable efforts to ensure that the [law] firm has in effect measures giving reasonable assurance that all lawyers in the [law] firm conform to the [MLRPC].

* * *

(c) A lawyer shall be responsible for another lawyer's violation of the [MLRPC] if:

(1) the lawyer orders or, with knowledge of the specific conduct, ratifies the conduct involved; or

---

[9]Although McDowell did so at Savage's direction, it is not a defense to a violation of the MLRPC "that the lawyer acted at the direction of another person[,]" MLRPC 5.2(a), unless the lawyer "act[ed] in accordance with a supervisory lawyer's reasonable resolution of an arguable question of professional duty." MLRPC 5.2(b). McDowell does not contend that it was reasonable for Savage to believe that it was not improper for one lawyer to sign trustee's deeds and affidavits on another lawyer's behalf.

> (2) the lawyer is a partner . . . and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.

"Whether an employee's ethical breaches are due to the employee's sub-standard performance or the deliberate circumvention of standard procedures, proper supervision must include mechanisms to determine whether the delegated tasks are being performed." Attorney Grievance Comm'n v. Kimmel, 405 Md. 647, 682, 955 A.2d 269, 290 (2008) (footnote omitted).

Here, clear and convincing evidence supports the hearing judge's conclusion that Burson had violated MLRPC 5.1(a). Prior to Burson's discovery of McDowell's and Savage's conduct, two other lawyers at the Shapiro Firm signed each other's names on foreclosure-related documents and were the subjects of show cause orders in various circuit courts as a result of the practice. As the Shapiro Firm's managing partner, Burson was aware that circuit courts issued show cause orders regarding the two lawyers' signing of documents. The hearing judge found that, despite being aware of the "prior incident," before learning that McDowell had signed trustee's deeds and affidavits on Savage's behalf, Burson made no efforts to ensure that the Shapiro Firm had in effect measures giving reasonable assurance that lawyers did not robo-sign documents. McDowell signed Savage's name in approximately 900 cases. The existence of the show cause orders involving allegedly improper signing of documents, coupled with the number of cases in which McDowell signed Savage's name, leads to the conclusion that clear and convincing evidence supports the hearing judge's determination that Burson made no

efforts to ensure that the Shapiro Firm had in effect measures giving reasonable assurance that lawyers did not robo-sign documents.

The hearing judge was correct in concluding that clear and convincing evidence did not establish that Burson was vicariously responsible for McDowell's conduct under MLRPC 5.1(c).[10]   As discussed above, McDowell violated MLRPC 8.4(d) by signing trustee's deeds and affidavits on Savage's behalf.  However, Burson neither ordered nor ratified the signatures; and, after learning about the signatures, Burson took reasonable remedial action by ensuring that McDowell's signing of the trustee's deeds on Savage's behalf neither created any problems as to title nor necessitated that the trustee's deeds be executed again.  Thus, it is readily apparent that Burson did not vicariously violate MLRPC 8.4(d) through McDowell's conduct.

### MLRPC 5.3 (Responsibilities Regarding Nonlawyer Assistants)

MLRPC 5.3 states:

With respect to a nonlawyer employed or retained by or associated with a lawyer:

(a) a partner . . . shall make reasonable efforts to ensure that the [law] firm has in effect measures giving reasonable assurance that the [nonlawyer]'s conduct is compatible with the professional obligations of the lawyer;

(b) a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the [nonlawyer]'s conduct is compatible with the professional obligations of the lawyer;

(c) a lawyer shall be responsible for conduct of [a nonlawyer] that would be

---

[10]Under certain circumstances, MLRPC 5.1(c) makes one lawyer vicariously responsible for another lawyer's violation of another MLRPC; thus, technically speaking, a lawyer cannot violate MLRPC 5.1(c) itself.

- 14 -

a violation of the [MLRPC] if engaged in by a lawyer if:

(1) the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved; or

(2) the lawyer is a partner . . . and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action[.]

Here, clear and convincing evidence supports the hearing judge's conclusion that Burson had violated MLRPC 5.3(a). Before learning that paralegals (who were also notaries public) had notarized trustee's deeds and affidavits that had been signed outside the paralegals' presence with notary jurats that stated that the trustee's deeds and affidavits had been signed in the paralegals' presence, Burson—the Shapiro Firm's managing partner—made no efforts to ensure that the Shapiro Firm had in effect measures giving reasonable assurance that paralegals did not falsely notarize documents. Just as Burson violated MLRPC 5.1(a) by negligently failing to supervise lawyers, so too did Burson violate MLRPC 5.3(a) by negligently failing to supervise paralegals.

The hearing judge was correct in concluding that clear and convincing evidence did not establish that Burson had violated MLRPC 5.3(b). The hearing judge did not find that Burson directly supervised paralegals at the Shapiro Firm.

The hearing judge was correct in concluding that clear and convincing evidence did not establish that Burson was vicariously responsible for the paralegals' conduct under MLRPC 5.3(c).[11] At the Shapiro Firm, paralegals (who were also notaries public)

_____

[11]Under certain circumstances, MLRPC 5.3(c) makes a lawyer vicariously responsible for a nonlawyer's conduct that, if performed by lawyers, would constitute a (Continued...)

- 15 -

notarized trustee's deeds and affidavits that had been signed outside the paralegals' presence. The notary jurats stated that the trustee's deeds and affidavits had been signed in the paralegals' presence. Thus, the paralegals falsely notarized the trustee's deeds and affidavits. Had the paralegals been lawyers, they would have violated MLRPC 8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation) by falsely notarizing the trustee's deeds and affidavits. Burson, however, neither ordered nor ratified the false notarizations; and, after learning about the false notarizations, Burson took reasonable remedial action by ensuring that the trustee's deeds did not need to be executed again. Thus, Burson did not vicariously violate MLRPC 8.4(c) through the paralegals' conduct.

## MLRPC 8.4(a) (Violating the MLRPC)

"It is professional misconduct for a lawyer to[] violate . . . the" MLRPC. MLRPC 8.4(a).

Here, clear and convincing evidence persuades us to reverse the hearing judge's conclusion that Burson had not violated MLRPC 8.4(a). As discussed above, Burson violated MLRPC 5.1(a) and 5.3(a).

Clear and convincing evidence persuades us to reverse the hearing judge's conclusion that McDowell had not violated MLRPC 8.4(a). As discussed above, McDowell violated MLRPC 8.4(d).

### (C) Sanctions

Burson recommends that we reprimand him; the Commission recommends that we

violation of another MLRPC; thus, technically speaking, a lawyer cannot violate MLRPC 5.3(c) itself.

- 16 -

suspend Burson from the practice of law in Maryland for thirty days. Originally, McDowell had recommended that we dismiss the charges against him, and the Commission had recommended that we reprimand McDowell; later, however, McDowell and the Commission filed in this Court the Joint Petition for Reprimand by Consent,[12] in which McDowell and the Commission recommend that we reprimand McDowell.[13]

This Court sanctions a lawyer "not to punish the" lawyer, but instead "to protect the public and the public's confidence in the legal profession[.]" Attorney Grievance Comm'n v. Frost, 437 Md. 245, 269, 85 A.3d 264, 278 (2014) (citations omitted). This Court protects the public by: (1) "deterr[ing]" other lawyers from engaging in similar misconduct; and (2) suspending or disbarring a lawyer who is "unfit to continue" to practice law. Id. at 269, 85 A.3d at 278 (citation omitted).

In determining an appropriate sanction for a lawyer's misconduct, this Court considers: "(a) the duty violated; (b) the lawyer's mental state; (c) the potential or actual

---

[12]In filing the Joint Petition for Reprimand by Consent, McDowell apparently abandoned his recommendation that we dismiss the charges against him. To the extent that the motion to dismiss remains before us, we deny the motion to dismiss.

[13]In contending that we should reprimand them, Burson and McDowell point out that the Commission reprimanded Savage for "permitting the execution of documents in his name when not personally signed by him[.]" "A reprimand by the Commission does not constitute precedent, and thus does not bind this Court in subsequent attorney discipline proceedings." Attorney Grievance Comm'n v. Greenleaf, __ Md. __, __ A.3d __, Misc. Docket AG No. 2, Sept. Term, 2013, 2014 WL 1998712, at *9 n.18 (Md. May 16, 2014). Simply put, this Court has no control over whether the Commission reprimands a lawyer. Thus, at oral argument, McDowell's counsel raised a red herring in contending that imposing a sanction that is greater than a reprimand would be inconsistent with this Court's jurisprudence. The Commission's reprimand of Savage plays no role in our determination of the appropriate sanctions for Burson's and McDowell's misconduct.

injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors." American Bar Association, *Standards for Imposing Lawyer Sanctions* ("ABA Standards") at III.C.3.0 (1992) (paragraph breaks omitted).[14]

> Aggravating factors include: (a) prior [attorney] disciplin[e]; (b) [a] dishonest or selfish motive; (c) a pattern of misconduct; (d) multiple [violations of the MLRPC]; (e) bad faith obstruction of the [attorney] disciplin[e] proceeding by intentionally failing to comply with [the Maryland R]ules or orders of [this Court]; (f) submission of false evidence, false statements, or other deceptive practices during the [attorney] discipline[e proceeding]; (g) refusal to acknowledge [the] wrongful nature of [the mis]conduct; (h) vulnerability of [the] victim; (i) substantial experience in the practice of law; (j) indifference to making restitution; [and] (k) illegal conduct, including that involving the use of controlled substances[.]

ABA Standards at III.C.9.22 (paragraph breaks omitted).

> Mitigating factors include: (a) [the] absence of [] prior [attorney] disciplin[e]; (b) absence of a dishonest or selfish motive; (c) personal or emotional problems; (d) timely good faith effort[s] to make restitution or to rectify consequences of [the] misconduct; (e) full and free disclosure to [the Commission] or [a] cooperative attitude toward [the attorney discipline] proceeding[]; (f) inexperience in the practice of law; (g) character or reputation; (h) physical disability; (i) [a] mental disability or chemical dependency including alcoholism or drug abuse [where]: (1) there is medical evidence that the [lawyer] is affected by a chemical dependency or mental disability; (2) the chemical dependency or mental disability caused the misconduct; (3) the [lawyer]'s recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (4) the recovery arrested the misconduct and recurrence of [the] misconduct is unlikely[;] (j) delay in [the attorney] disciplin[e] proceeding[]; (k) [the] imposition of other penalties or sanctions; (l) remorse; [and] (m) remoteness of prior [violations of the MLRPC].

---

[14]"[I]n determining an appropriate sanction," this Court often considers the ABA Standards. <u>Attorney Grievance Comm'n v. McDonald</u>, 437 Md. 1, 45, 85 A.3d 117, 143 (2014) (citation omitted).

ABA Standards at III.C.9.32 (paragraph breaks omitted).

## Appropriate Sanction for Burson's Misconduct

As to the duty violated, Burson violated MLRPC 5.1(a) (Responsibilities of Partners, Managers, and Supervisory Lawyers) by making no efforts to ensure that the Shapiro Firm had in effect measures giving reasonable assurance that lawyers did not robo-sign documents; additionally, Burson violated MLRPC 5.3(a) (Responsibilities Regarding Nonlawyer Assistants) by making no efforts to ensure that the Shapiro Firm had in effect measures giving reasonable assurance that paralegals did not falsely notarize documents. Burson's mental state was one of negligence, "[t]he least culpable mental state[,]" ABA Standards at II; Burson knew neither that McDowell was signing trustee's deeds and affidavits on Savage's behalf, nor that paralegals were falsely notarizing documents. Moreover, on this record, we do not conclude that Burson blinded himself willfully to what was occurring.

Burson's neglect of his managerial duties did not cause any tangible injury; none of the trustee's deeds were defective or challenged timely in court. We note only one aggravating factor, namely, Burson's substantial experience in the practice of law; Burson has been a member of the Bar of Maryland for approximately twenty-nine years. We note seven mitigating factors: (1) the absence of prior attorney discipline; (2) the absence of a dishonest or selfish motive; (3) timely good faith efforts to rectify the misconduct's consequences and to prevent future misconduct by ensuring that McDowell's signing of the trustee's deeds on Savage's behalf neither created any problems as to title nor necessitated that the trustee's deeds be executed again, requiring

- 19 -

all employees at the Shapiro Firm to promise in writing that they would neither sign others' names nor allow others to sign their names, and requiring all notaries public at the Shapiro Firm to promise in writing that they would not violate laws regarding notarizations; (4) a cooperative attitude toward this attorney discipline proceeding; (5) character, as Burson is respected for his integrity; (6) other penalties in the form of being sued, receiving adverse media coverage, voluntarily stopping the active practice of law, and withdrawing from the Shapiro Firm, which no longer bears Burson's name; and (7) remorse.

We agree with Burson that a reprimand is the appropriate sanction for his misconduct. Although Burson made no efforts to ensure that the Shapiro Firm had in effect measures giving reasonable assurance that lawyers did not robo-sign documents and that notaries public did not falsely notarize documents, Burson did not participate in (or even know of) the robo-signing and false notarizations; thus, Burson's misconduct was negligent rather than knowing or intentional. Burson's misconduct is aggravated only by substantial experience in the practice of law, and is mitigated by a myriad of significant factors, such as his voluntary cessation of the active practice of law.

We agree with Burson and the Commission that Burson's misconduct is distinguishable from that of the lawyer in Dore, 433 Md. at 727, 689, 707, 708-09, 73 A.3d at 186, 163, 174, 175, in which this Court suspended from the practice of law in Maryland for ninety days a lawyer who had robo-signed documents, violated MLRPC 3.3(a)(1) (Making or Failing to Correct a False Statement to a Tribunal), and violated MLRPC 5.3(a) (Responsibilities Regarding Nonlawyer Assistants) through intentional

misconduct. By contrast, here, Burson did not robo-sign documents, did not violate MLRPC 3.3(a)(1), and violated MLRPC 5.3(a) through negligence rather than intentional misconduct.

Similarly, we agree with Burson and the Commission that Burson's misconduct is distinguishable from that of the lawyers in Kimmel, 405 Md. at 689, 672, 955 A.2d at 294, 284, in which this Court indefinitely suspended from the practice of law in Maryland, with the right to apply for reinstatement no sooner than ninety days, lawyers who had violated MLRPC 5.1 (Responsibilities of Partners, Managers, and Supervisory Lawyers) and 1.4 (Communication). The lawyers, partners at a law firm, see id. at 651, 955 A.2d at 271, "failed to design and implement policies and procedures that reasonably would ensure [the lawyers' subordinate's] compliance with the Maryland Rules[.]" Id. at 680, 955 A.2d at 289. This Court stated that the lawyers' misconduct caused "egregious" injury to the law firm's clients. Id. at 685, 955 A.2d at 292 (citation omitted). This Court noted no aggravating factors and noted two mitigating factors: (1) the absence of prior attorney discipline; and (2) timely good faith efforts to rectify the misconduct's consequences. See id. at 687-88, 955 A.2d at 293-94. In contrast to the misconduct of the lawyers in Kimmel, here, Burson's misconduct caused no tangible injury and is mitigated by a myriad of significant factors.

We are unpersuaded by the Commission's reliance on Attorney Grievance Comm'n v. Goldberg, 292 Md. 650, 658, 441 A.2d 338, 342 (1982), in which this Court suspended for thirty days from the practice of law in Maryland a lawyer who had failed to "adequately supervise his employee." In Goldberg, id. at 652, 441 A.2d at 339, the

- 21 -

employee "failed to prepare" certain documents and deposit checks from clients. The lawyer failed "to make inquiry [of the employee] when [certain] matters did not cross his desk for his signature." Id. at 658, 441 A.2d at 342. Additionally, the lawyer failed to take "the simple precaution of running his eye over bank statements at the end of the month." Id. at 656, 441 A.2d at 341. This Court found no aggravating factors and three mitigating factors: (1) the absence of prior attorney discipline; (2) timely good faith efforts to prevent future misconduct; and (3) character. Id. at 658, 441 A.2d at 342. Although this Court noted that "there appear[ed] to have been no actual loss to [the lawyer's] clients[,]" the Court suspended the lawyer for thirty days. Id. at 658, 441 A.2d at 342. In contrast to Goldberg, here, McDowell's and the paralegals' actions (*i.e.*, robo-signing and false notarizations) were not as glaring or as easily noticed as the employee's failure to prepare documents and deposit checks in Goldberg; in other words, Burson's failure to adequately supervise McDowell and the paralegals was less egregious than the lawyer's failure to adequately supervise the employee in Goldberg. Additionally, Burson's misconduct is mitigated by a number of significant factors, including his voluntary cessation of the practice of law.

To be clear, we caution partners—and lawyers who "possess[] comparable managerial authority[,]" MLRPC 5.1(a); MLRPC 5.3(a)—that our decision to reprimand Burson is based on this attorney discipline proceeding's unique circumstances. Under other circumstances, this Court would suspend a lawyer who violates MLRPC 5.1(a), see Kimmel, 405 Md. at 689, 680, 955 A.2d at 294, 289, or MLRPC 5.3(a). See Dore, 433 Md. at 727, 708, 73 A.3d at 186, 175. We recommend that partners and lawyers who

possess comparable managerial authority at law firms that represent mortgagees in foreclosure actions consider how to avoid Burson's situation and ensure that their firms have in effect measures that will assure that the conduct of their subordinates is consistent with the professional obligations of the supervising lawyer.

For the above reasons, we reprimand Burson.

### Appropriate Sanction for McDowell's Misconduct

In Attorney Grievance Comm'n v. Paul, 423 Md. 268, 293, 289, 274, 31 A.3d 512, 527, 525, 516 (2011), this Court reprimanded a lawyer who violated MLRPC 8.4(d) (Conduct That Is Prejudicial to the Administration of Justice) and 3.3(a) (Candor Toward the Tribunal) by filing in a trial court a document onto which the lawyer had cut-and-pasted another person's signature without the other person's knowledge. As to the lawyer's mental state, this Court noted that the lawyer "honestly believed that he was legally authorized to" cut-and-paste the other person's signature. Id. at 292, 31 A.3d at 527. This Court noted that the lawyer's misconduct "was not detrimental to his clients[.]" Id. at 292, 31 A.3d at 527. This Court did not note any aggravating factors, and noted six mitigating factors: (1) the absence of prior attorney discipline; (2) the absence of a dishonest or selfish motive; (3) timely good faith efforts to prevent future misconduct; (4) character; (5) remorse; and (6) another penalty in the form of the lawyer's losing his job. See id. at 292-93, 31 A.3d at 527.

Here, as to the duty violated, McDowell violated 8.4(d) (Conduct That is Prejudicial to the Administration of Justice) by signing trustee's deeds and affidavits on Savage's behalf. As to McDowell's mental state, McDowell signed trustee's deeds and

affidavits on Savage's behalf because Savage told McDowell to do so;[15] McDowell believed (albeit mistakenly) that doing so was not improper. As to the potential or actual injury that McDowell's misconduct caused, McDowell's misconduct tarnished the public's perception of the legal profession, but did not cause any tangible injury; none of the trustee's deeds were defective or challenged in court. We note two aggravating factors: a pattern of misconduct and multiple violations of the MLRPC, as demonstrated by McDowell's signing trustee's deeds and affidavits on Savage's behalf in approximately 900 foreclosure actions. We note four mitigating factors: (1) the absence of prior attorney discipline; (2) the absence of a dishonest or selfish motive; (3) a cooperative attitude toward this attorney discipline proceeding; and (4) remorse.

We agree with McDowell and the Commission that a reprimand is the appropriate sanction for McDowell's misconduct. Although McDowell signed trustee's deeds and affidavits on Savage's behalf, McDowell had a relatively blameless mental state in doing so, as McDowell did so at Savage's direction and believed that doing so was not improper. Although McDowell's misconduct is aggravated by a pattern of misconduct

_____

[15]As noted above, generally, it is not a defense to a violation of the MLRPC "that the lawyer acted at the direction of another person." MLRPC 5.2(a). That said, in determining an appropriate sanction for a lawyer's misconduct, this Court considers "the lawyer's mental state[.]" ABA Standards at III.C.3.0. Thus, a lawyer who engages in misconduct at another's direction might receive a lesser sanction than a lawyer who engages in misconduct on the lawyer's own initiative. See Attorney Grievance Comm'n v. Sudha Narasimhan, __ Md. __, __ A.3d __, Misc. Docket AG No. 77, Sept. Term, 2012, 2014 WL 2154057, at *8 n.9 (Md. May 23, 2014) ("[T]o the extent that [another lawyer]'s conduct played a role in [a lawyer's] violation [of an MLRPC], such a fact could be considered in determining the appropriate sanction, but would not affect whether or not [the lawyer] violated a particular MLRPC.").

- 24 -

and multiple violations of the MLRPC, McDowell's misconduct is mitigated by the absence of prior attorney discipline, the absence of a dishonest or selfish motive, a cooperative attitude toward this attorney discipline proceeding, and sincere remorse. Under rare circumstances, a reprimand may be the appropriate sanction for a violation of MLRPC 8.4(d) (Conduct That is Prejudicial to the Administration of Justice). See Paul, 423 Md. at 293, 289, 31 A.3d at 527, 525.

We agree with McDowell that his misconduct is distinguishable from that of the lawyer in Dore, 433 Md. at 727, 717, 710, 73 A.3d at 186, 180, 176, in which this Court suspended from the practice of law in Maryland for ninety days a lawyer who had robo-signed documents on his own initiative, violated MLRPC 3.3(a)(1) (Making or Failing to Correct a False Statement to a Tribunal), violated MLRPC 5.3(a) (Responsibilities Regarding Nonlawyer Assistants), and negatively impacted the courts' operation. By contrast, here, McDowell signed trustee's deeds and affidavits on Savage's behalf at Savage's direction, did not violate MLRPC 3.3(a)(1), did not violate MLRPC 5.3(a), and did not negatively impact the courts' operation.

For the above reasons, we reprimand McDowell and grant the Joint Petition for Reprimand by Consent.

**IT IS SO ORDERED; RESPONDENTS SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16-761(b), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION JOINTLY AND SEVERALLY AGAINST MATTHEW JOHN MCDOWELL AND JOHN STEPHEN BURSON.**