*Attorney Grievance Commission of Maryland v. Louisa Content McLaughlin*, Miscellaneous Docket AG No. 47, September Term, 2016

**ATTORNEY DISCIPLINE — SANCTIONS — DISBARMENT —** Respondent Louisa Content McLaughlin violated the Maryland Lawyers' Rules of Professional Conduct ("MLRPC") and Maryland Code (1957, 2010 Repl. Vol.), § 10-306 of the Business Occupations and Professions Article ("BP") in her capacity as a representative of Doris Leedom. Respondent did not act diligently in the representation to protect her client's interests. Respondent failed to communicate with her client about essential matters concerning the representation. Respondent did not provide invoices or receive client approval before withdrawing fees. Respondent disbursed client funds to the client's power of attorney without obtaining appropriate consent under the terms of the representation.

Paula McCabe, Ms. Leedom's daughter, complained to the Attorney Grievance Commission of Maryland ("AGC") that Respondent had failed to act in her client's best interests and had failed to respond to communications. She also alleged that Respondent had failed to account for assets, and mismanaged client funds. When the AGC investigated the matter, Respondent provided incomplete records and made knowing and intentional misrepresentations. Respondent also failed to respond to Bar Counsel's requests for information, the Petition for Disciplinary Action, and discovery requests. Respondent did not attend the evidentiary hearing. Respondent violated (1) MLRPC 1.3 (Diligence); (2) MLRPC 1.4 (a) and (b) (Communication); (3) MLRPC 1.5(a) (Fees); (4) MLRPC 8.1(a) and (b) (Bar Admission and Disciplinary Matters); (5) MLRPC 8.4(a), (c), and (d) (Misconduct); and (6) BP § 10-306 (Misuse of Trust Money) when she neglected to communicate with her client about essential matters, failed to explain the basis for her fees or supply invoices, mishandled client funds, failed to fully comply with the AGC's disciplinary investigation, and made knowing and intentional misrepresentations to Bar Counsel. Taken together, and particularly because of Respondent's misrepresentations, these violations warrant disbarment.

Circuit Court for Harford County
Case No.: 12-C-16-002780
Argued: September 11, 2017

IN THE COURT OF APPEALS

OF MARYLAND

---

Misc. Docket AG No. 47

September Term, 2016

---

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

LOUISA CONTENT MCLAUGHLIN

---

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.

---

Opinion by Adkins, J.

---

Filed: October 20, 2017

The Attorney Grievance Commission of Maryland ("AGC"), acting through Bar Counsel, filed a Petition for Disciplinary or Remedial Action ("Petition") against Respondent Louisa Content McLaughlin. Bar Counsel charged McLaughlin with violating the Maryland Lawyers' Rules of Professional Conduct ("MLRPC")[1] during her representation of Doris Leedom.

The AGC investigated after Paula McCabe, Ms. Leedom's daughter and power of attorney, filed a complaint. Bar Counsel alleged that McLaughlin violated the following: (1) Rule 1.3 (Diligence);[2] (2) Rule 1.4(a) and (b) (Communication);[3] (3) Rule 1.5(a)

---

[1] Effective July 1, 2016, the MLRPC were renamed the Maryland Attorneys' Rules of Professional Conduct ("MARPC") and renumbered. Rules Order (June 6, 2016). The revised rules are now numbered as follows: MARPC 19-301.3 (Diligence), MARPC 19-301.4 (Communication), MARPC 19-301.5 (Fees), MARPC 19-301.15 (Safekeeping Property), MARPC 19-308.1 (Bar Admission and Disciplinary Matters), and MARPC 19-308.4 (Misconduct). We will refer to the MLRPC because the misconduct at issue occurred before this change.

[2] **Rule 1.3. Diligence**
A lawyer shall act with reasonable diligence and promptness in representing a client.

[3] **Rule 1.4. Communication**
(a) A lawyer shall
   (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these Rules;
   (2) keep the client reasonably informed about the status of the matter;
   (3) promptly comply with reasonable requests for information; and
   (4) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Maryland Lawyers' Rules of Professional Conduct, or other law.
(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

(Fees);[4] (4) Rule 1.15(a) and (e) (Safekeeping Property);[5] (5) Rule 8.1(a) and (b) (Bar

Admission and Disciplinary Matters);[6] (6) Rule 8.4 (a), (c) and (d) (Misconduct);[7] and

---

[4] **Rule 1.5. Fees**

(a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

[5] **Rule 1.15. Safekeeping Property**

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created.

***

(e) When a lawyer in the course of representing a client is in possession of property in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is resolved. The lawyers shall distribute

2

Maryland Code (1957, 2010 Repl. Vol.), § 10-306 of the Business Occupations and

Professions Article ("BP") (Misuse of Trust Money).[8]

We transmitted the matter to the Honorable Kevin J. Mahoney ("the hearing judge")

of the Circuit Court for Harford County to hear the case. After trying and failing to serve

McLaughlin, Bar Counsel served the Client Protection Fund of the Bar of Maryland

pursuant to Maryland Rule 19-723(b). The Fund mailed the Petition to McLaughlin at

---

promptly all portions of the property as to which the interests are not in dispute.

[6] **Rule 8.1. Bar Admission and Disciplinary Matters**
An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
(a) knowingly make a false statement of material fact; or
(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

[7] **Rule 8.4. Misconduct**
It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
\*\*\*
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice . . . .

[8] **Maryland Code (1957 2010 Repl. Vol.), Business Occupations & Professions, § 10-306. Misuse of Trust Money**
A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer.

three different addresses. When McLaughlin did not answer the Petition, Bar Counsel moved for an Order of Default under Maryland Rule 2-613(b), which the Circuit Court granted. McLaughlin was sent notice of the Default Order and served with Bar Counsel's discovery requests. McLaughlin never responded to Bar Counsel, nor sought to overturn the default.

McLaughlin did not appear at the Circuit Court hearing on March 20, 2017. The hearing judge concluded that because McLaughlin had defaulted, all requests for admissions in Bar Counsel's discovery requests were deemed admitted pursuant to Maryland Rule 2-424(b). The hearing judge issued Findings of Fact and Conclusions of Law, based on the admitted facts, in which he found by clear and convincing evidence that McLaughlin violated MLRPC 1.3, 1.4(a) and (b), 1.5(a), 1.15(a) and (e), 8.1(a) and (b), 8.4(a), (c), and (d), and BP § 10-306. He found multiple aggravating factors and no mitigating factors.

## THE HEARING JUDGE'S FINDINGS OF FACT

The hearing judge made the following findings of fact. McLaughlin was admitted to the Maryland Bar on June 15, 2004 and has substantial experience in the practice of law.

In 2011, Ms. Leedom, then age 86, and a resident of New York, retained McLaughlin to prepare estate planning documents. Ms. Leedom gave her son George Leedom ("Mr. Leedom") her power of attorney, and her daughter, Mrs. McCabe, was identified as his successor. When Ms. Leedom moved to Maryland in 2013, McLaughlin drafted a Maryland power of attorney for her, which named Mr. Leedom as her agent. In 2013, Ms. Leedom sold her New York home and gifted the proceeds, over $500,000, to

4

Mr. Leedom.  McLaughlin provided some advice regarding this gift.  The hearing judge found that Mr. Leedom managed his mother's finances from 2011 to June 2014.  At that time,

> Mr. Leedom entered a rehabilitation for substance abuse issues, and Mrs. McCabe notified [McLaughlin] . . . . However, [McLaughlin] did not advise Ms. Leedom of the risks of allowing Mr. Leedom to continue to serve as her power of attorney at any time after June 2014.  In fact, [McLaughlin] did not communicate with Ms. Leedom at all in June 2014, and never discussed Mr. Leedom's substance abuse issues with Ms. Leedom.
>
> On August 12, 2014, Ms. Leedom, with [McLaughlin's] assistance, sold two pieces of property located in Aberdeen, Maryland.  The sale of the two properties resulted in net proceeds to Ms. Leedom of approximately $95,000.00. [McLaughlin] agreed to serve as an escrow agent, holding the proceeds of the sale in her Attorney Trust Account. Respondent was not to disburse the proceeds of the sale until [Mr.] Leedom and Mrs. McCabe agreed on the disposition of the funds.

The hearing judge found that despite this agreement, McLaughlin disbursed $10,000 to Mr. Leedom in October 2014.  McLaughlin did not notify Mrs. McCabe or obtain her consent to the disbursement.

In December 2014, Ms. Leedom executed a power of attorney, naming McLaughlin as her agent.  The next month, McLaughlin "paid herself $5,175.00 from Ms. Leedom's funds held in her trust account without Mrs. McCabe's authorization or consent." McLaughlin did not provide invoices or billing statements to Ms. Leedom, or to Mr. Leedom when he had his mother's power of attorney.

5

Ms. Leedom executed another power of attorney in April 2015, naming Mrs. McCabe as her agent. Mrs. McCabe immediately sent McLaughlin a letter asking "for an accounting of and the return of her mother's funds." The hearing judge found that McLaughlin provided an accounting in May, "but refused to return the balance of Ms. Leedom's funds unless and until Mrs. McCabe signed a waiver releasing [McLaughlin] from any and all liability." He also found that Mrs. McCabe signed this release under duress.

In July 2015, Mrs. McCabe filed a complaint with the AGC. Bar Counsel sent McLaughlin a copy of the complaint and requested a written response. McLaughlin submitted a written response on September 18. The hearing judge found that McLaughlin made "knowing and intentional misrepresentations to Bar Counsel" in her response, specifically:

> [McLaughlin] stated that 'Doris Leedom . . . was adamant that she did not want her daughter [Paula McCabe] involved. I had been told by [Mr.] Leedom on several occasions that his mother became very agitated and combative when Paula wanted to take her to a hair appointment or when her name came up. I witnessed this on several occasions in meetings just between Doris Leedom and myself.'

> [McLaughlin] also misrepresented to Bar Counsel that she was in frequent contact with [Mr.] Leedom, including in person meetings, in the fall of 2014. Additionally, [McLaughlin] misrepresented that she wrote a letter to Mrs. McCabe on May 15, 2015, when in fact she had not. [McLaughlin] also misrepresented that Mike McCabe, Paula McCabe's husband, '[o]n more than one occasion . . . said he did not want to deal with Paula or have her get involved and finally on May 8, 2015 said he was not getting involved with this and that he had told Paula he wanted nothing to do with her actions.' Finally, [McLaughlin] misrepresented that she 'explained on several

occasions to Mrs. McCabe [that] there was never an [escrow] account in Doris Leedom's name.'

Bar Counsel sent a letter to McLaughlin dated November 13, 2015, which explained that the matter had been docketed for further investigation, enclosed additional correspondence from Mrs. McCabe, and requested a response. Bar Counsel sent a similar letter on January 11, 2016. McLaughlin received both of these letters, but never responded.

An AGC investigator interviewed McLaughlin in February 2016. McLaughlin told the investigator that she did not think she had to respond to Bar Counsel's November 13 letter, and that she "did not recall" receiving the January 11 letter. Bar Counsel sent McLaughlin additional copies of the previous correspondence through U.S. mail and e-mail. McLaughlin received, but did not respond to these communications.

## THE HEARING JUDGE'S CONCLUSIONS OF LAW

The hearing judge found that an evidentiary hearing was unnecessary because the Circuit Court had entered an Order of Default and McLaughlin had not moved to vacate the order. He found that the admitted facts were "sufficient by a clear and convincing standard" to justify the court's conclusions of law that McLaughlin violated MLRPC 1.3, 1.4(a) and (b), 1.5(a), 1.15(a) and (e), 8.1(a) and (b), 8.4(a), (c), and (d), and BP § 10-306.

## MLRPC 1.3: Diligence

The hearing judge concluded that McLaughlin violated Rule 1.3 when she "fail[ed] to promptly advise her client, Doris Leedom, of the risks of continuing to have [Mr.] Leedom act as her power of attorney when [Mr.] Leedom was experiencing problems with

7

substance abuse." This "increased the likelihood that her client would suffer adverse financial consequences."

## MLRPC 1.4: Communication

The hearing judge found that McLaughlin violated 1.4(a) by failing "to provide information, advice and counsel to her client regarding the propriety of having [Mr.] Leedom, who had known substance abuse issues, continue as her power of attorney." This omission left Ms. Leedom without "sufficient information to participate in making decisions regarding the representation." The hearing judge found that McLaughlin's failure "to explain to [Ms.] Leedom in any manner, the risks of having [Mr.] Leedom continue as her power of attorney" violated Rule 1.4(b) because she never explained the matter to permit her client to make an informed decision.

## MLRPC 1.5(a): Fees

The hearing judge found that McLaughlin never provided an invoice or billing statement for the $5,175 fee to either her client or her power of attorney. She simply deducted the money from her IOLTA account, and the only justification for this fee was a notation: "through 08/2014." The hearing judge found that "[w]ithout any basis to substantiate her charges in this case, [McLaughlin's] fee is unreasonable," and violated Rule 1.5(a).

## MLRPC 1.15(a) and (e): Safekeeping Property

The hearing judge found that McLaughlin "violated . . . Rule [1.15(a)] when she failed to keep her own property, i.e., the $5,175 in fees she earned in August 2014, separate from [Ms.] Leedom's own property," because "she failed to withdraw the funds from the

8

IOLTA account until January 24, 2015." The hearing judge found that McLaughlin violated Rule 1.15(e) "by disbursing $10,000 to George Leedom in October 2014 without Mrs. McCabe's consent. . . . [and] when she disbursed $5,175.00 to herself for attorney's fees without Mrs. McCabe's consent."

### MLRPC 8.1: Bar Admission and Disciplinary Matters

The hearing judge concluded that McLaughlin violated Rule 8.1(a) when she repeatedly made false statements to Bar Counsel in her September 18, 2015 letter. The hearing judge found that McLaughlin violated Rule 8.1(b) because she received three requests for information from Bar Counsel and never responded.

### MLRPC 8.4: Misconduct

The hearing judge determined that McLaughlin violated Rule 8.4(a) because she violated other Rules of Professional Conduct. The hearing judge concluded that McLaughlin's five misrepresentations to Bar Counsel in the September 18 letter violated Rule 8.4(c), which prohibits conduct involving dishonesty or misrepresentation.

The hearing judge found that McLaughlin's "failures to communicate with her client, failures to safeguard her client's funds, misrepresentations to [Bar Counsel], and failures to respond to [Bar Counsel's] lawful requests for information" were "likely to impair public confidence in the profession and impact the image of lawyers in the public eye." Such conduct was prejudicial to the administration of justice, and violated 8.4(d).

### Business Occupations & Professions § 10-306: Misuse of Trust Money

The hearing judge found that McLaughlin violated § 10-306 when she disbursed $10,000 to Mr. Leedom and $5,175 to herself contrary to the agreement that she would not

9

disburse any proceeds from the sale of the Aberdeen properties until Mr. Leedom and Mrs. McCabe could agree on the disposition of the funds.

**Aggravating and Mitigating Factors**

Relying on *Attorney Grievance Comm'n v. Shuler*, 443 Md. 494, 506–07 (2015), the hearing judge considered: (1) the rules McLaughlin violated; (2) her mental state; (3) the injury her misconduct caused, or could have caused; and (4) aggravating and mitigating factors. He found that McLaughlin had violated numerous Rules of Conduct and BP § 10-306. The hearing judge concluded that McLaughlin's mental state "seem[ed] to be intentional and deliberate" based on her September 18 letter. He found that Ms. Leedom lost $10,000 when McLaughlin released funds to Mr. Leedom without Mrs. McCabe's consent, and $5,175 when McLaughlin transferred the fee to herself without "proper documentation that [she] had earned those fees." Ms. Leedom may have lost additional funds when McLaughlin failed to advise her client of the dangers of retaining Mr. Leedom as her power of attorney.

The hearing judge found multiple aggravating factors. He found that McLaughlin had violated multiple rules and BP §10-306. She engaged in "bad faith obstruction of the attorney discipline proceedings" because she "failed to respond to [Bar Counsel's] last three letters. . . . failed to file an answer to the PDRA, which resulted in a default judgement being entered against her. . . . [and] she failed to respond to any of [Bar Counsel's] discovery requests." McLaughlin "submitted false statements, false evidence, and engaged in other deceptive practices" by making multiple misrepresentations in her response to Bar Counsel. McLaughlin did not acknowledge the wrongful nature of her misconduct because

10

she "never admitted that she violated any Rules of Professional Conduct. . . . [and] never apologized for her misconduct."

The hearing judge found that Ms. Leedom was a vulnerable victim because she was 89 years of age at the time the misconduct occurred. McLaughlin had substantial experience in the practice of law. McLaughlin was indifferent to making restitution or correcting her misconduct because she never refunded her fees, nor apologized. He also found that McLaughlin was likely to repeat her misconduct, because "absent recognition of and remorse for her wrongdoing, there is a substantial likelihood that she will repeat it." The hearing judge found that McLaughlin had no available mitigating factors because she had not provided any evidence, nor had she "participated in any way during these proceedings . . . ."

## DISCUSSION

In proceedings before this Court, McLaughlin was limited to addressing sanctions because of the default entered against her. We issued a per curiam order disbarring McLaughlin on September 11, 2017. *See Attorney Grievance Comm'n v. McLaughlin*, ___ Md. ___ (2017). We now explain the basis for that order.

### Standard of Review

"In attorney discipline proceedings, this Court has original and complete jurisdiction and conducts an independent review of the record." *Attorney Grievance Comm'n v. McClain*, 406 Md. 1, 17 (2008). The Court will accept the hearing judge's findings of fact unless they are clearly erroneous. *Attorney Grievance Comm'n v. Page*, 430 Md. 602, 626 (2013). Both parties may file "exceptions to the findings and conclusions of the hearing

judge[.]" Maryland Rule 19-728(b)(1).  Because neither party filed an exception in this case, we choose to "treat the findings of fact as established."  Md. Rule 19-741(b)(2)(A); *see also Attorney Grievance Comm'n v. De La Paz*, 418 Md. 534, 552 (2011).  We review the hearing judge's conclusions of law without deference, "even where default orders and judgments have been entered at the hearing level."  *Attorney Grievance Comm'n v. Harrington*, 367 Md. 36, 49 (2001).

## The Order of Default

The hearing judge entered an Order of Default under Md. Rules 2-613(b) and 19-724(c) because McLaughlin never filed a response to the Petition.  He relied on *Attorney Grievance Comm'n v. Thomas*, 440 Md. 523, 550–51 (2014), to conclude that "a full-blown evidentiary hearing [wa]s not necessary."

In *Thomas*, we explained:

> In the context of a default attorney grievance proceeding, . . . after an order of default has been entered, the taking of additional evidence may be warranted only when, as noted above, new and material evidence has come to light since the filing of the PDRA, or perhaps when the hearing judge expresses doubt as to certain averments (or absence thereof) and invites live testimony or additional demonstrative evidence.

*Id.* at 547 n.26.  Absent those circumstances, in the event of a default, the hearing judge is not required to hold a full evidentiary hearing.  *Id.* at 550.

The hearing judge properly entered an Order of Default when McLaughlin failed to answer the Petition, *see* Md. Rules 2-613(b), 19-724(c), and never sought to vacate the

12

default under Md. Rule 2-613(d).[9]  We turn our attention to whether the admitted facts were sufficient by a clear and convincing standard to warrant the hearing judge's conclusions of law.

### MLRPC 1.3: Diligence

Rule 1.3 requires an attorney to "act with reasonable promptness and diligence in representing a client."  Our review of the record reveals that McLaughlin was aware that Mr. Leedom had a history of substance abuse before she began representing Ms. Leedom.  McLaughlin was aware that Mr. Leedom entered a facility to treat his substance abuse in June of 2014, and interacted with him while he was intoxicated after he had been released from treatment.  Mrs. McCabe had contacted McLaughlin in July 2014 regarding her brother's past and current substance abuse problems, and alleged that he had poor financial management skills.  McLaughlin's September 18 letter lists a series of events between June and December 2014 that should have raised concerns for any reasonable attorney regarding Mr. Leedom's fitness to serve as his mother's power of attorney.[10]

---

[9] The summons requested a "written response by pleading or motion, within 30 days after service of this summons . . . ."  Although the Circuit Court of Harford County entered the Order of Default within those 30 days, McLaughlin never sought to overturn the default, nor did she appear at the hearing.  The issue is ultimately irrelevant to the outcome of this case, and this Court will not speculate as to what might have happened had McLaughlin complied with her obligations.

[10] Mr. Leedom was accused of assaulting his elderly father and a protective order was issued against him.  Mr. Leedom's wife and Mrs. McCabe complained to McLaughlin about his substance abuse.  McLaughlin learned that Mr. Leedom had spent over half a million dollars that his mother had given him in a very short period of time.  McLaughlin also reported that Adult Protective Services contacted her to discuss concerns that Ms. Leedom was being financially abused.

These events undoubtedly impacted Ms. Leedom's interests. *See* MLRPC 1.3, cmt. [3] ("A client's interests often can be adversely affected by the passage of time or the change of conditions . . . ."). Despite learning new information and observing changes in Mr. Leedom's behavior, McLaughlin did not promptly discuss these issues with her client, or act to protect her client's financial interests. We have "consistently regarded neglect and inattentiveness to a client's interests to be a violation of the Canon of Ethics warranting the imposition of some disciplinary sanction." *Attorney Grievance Comm'n v. Montgomery*, 296 Md. 113, 120 (1983).

There is no evidence that McLaughlin investigated the situation, or verified that Mr. Leedom was complying with his obligations as his behavior deteriorated.[11] An attorney who fails to investigate a client's matter violates Rule 1.3. *See Attorney Grievance Comm'n v. London*, 427 Md. 328, 347 (2012) ("The failure to consistently monitor and manage a client's business is a classic example of a Rule 1.3 violation."); *Attorney Grievance Comm'n v. Monfried*, 368 Md. 373, 385, 394 (2002) (attorney violated Rule 1.3 when he failed to investigate a client's matter).

McLaughlin violated Rule 1.3 when she did not act to protect her client against Mr. Leedom's behavior, including advising her client about the risk of keeping Mr. Leedom as

---

[11] McLaughlin says that she "did not dismiss the [information from Mrs. McCabe], but . . . did not find it alarming." Mrs. McCabe made serious allegations of financial mismanagement and drug abuse. This communication **should have** alarmed McLaughlin and at a minimum, spurred her to investigate the financial mismanagement claims, particularly if they could adversely affect her client's interests. *See* MLRPC 1.3, cmt. [1] ("An attorney must also act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf.").

14

her power of attorney when he was experiencing substance abuse problems or investigating whether he was complying with his duties as her power of attorney.

## MLRPC 1.4: Communication

"Attorneys violate Rule 1.4 when they fail to communicate with clients and keep them informed of the status of their legal matters." *Attorney Grievance Comm'n v. Powers*, 454 Md. 79, 93 (2017). The duty to communicate includes providing information about "significant developments affecting . . . the substance of the representation." MLRPC 1.4, cmt. [3]; *see also Attorney Grievance Comm'n v. Narasimhan*, 438 Md. 638, 656–57 (2014) (failing to inform a client about the status of a matter or update the client after significant case developments violates Rule 1.4(a)).

The record shows that Ms. Leedom engaged McLaughlin for estate planning, including establishing a power of attorney to manage her financial affairs. McLaughlin was required "when appropriate, to consult with the client about the means to be used to accomplish the client's objectives." MLRPC 1.4, cmt. [3]. McLaughlin knew that her 89-year-old client suffered from the early stages of dementia and did not wish to manage her own affairs.[12] Moreover, she learned from a third party—after the instrument was signed—that Mr. Leedom entered a rehabilitation facility for his alcoholism. McLaughlin did not know whether her vulnerable client was aware of this change in circumstances.

---

[12] McLaughlin's September 18 letter stated that Ms. Leedom was "suffering from early stages of dementia," but was competent to sign a legal document.

15

When the representation began, both McLaughlin and Ms. Leedom knew of Mr. Leedom's history of substance abuse problems. Surely, the reoccurrence of Mr. Leedom's substance abuse problems could affect his ability to manage his mother's financial affairs under the power of attorney, and could well increase the risk of mismanagement and loss. Under these circumstances, McLaughlin had a duty to communicate with Ms. Leedom about this information.[13] Her failure to discuss this information with Ms. Leedom violated Rule 1.4(a) because she did not keep her client reasonably informed about the matter.

Rule 1.4(b) requires an attorney to "explain on-going matters to the extent reasonably necessary to allow a client to make informed decisions . . . ." *Attorney Grievance Comm'n v. Steinberg*, 395 Md. 337, 363 (2006). Whether a lawyer has fulfilled this duty "depends in part on the kind of advice or assistance that is involved." MLRPC 1.4, cmt. [5]. In *Attorney Grievance Comm'n v. Rand*, 429 Md. 674, 717 (2012), we explained that the analysis of whether an attorney has violated Rule 1.4(b) requires considering "the entire interaction between [the attorney] and [the client] and the information that was communicated."

McLaughlin violated Rule 1.4(b) when she did not explain to Ms. Leedom the risks of having Mr. Leedom continue as her power of attorney. *See Attorney Grievance Comm'n v. Shuler*, 454 Md. 200, 214 (2017) (failure to explain important aspects of the matter to a

---

[13] This is not to say that an attorney drafting a power of attorney is always obligated to discuss or investigate the reliability or health of the person given authority under the instrument. Certainly an attorney generally is entitled to rely on the good judgment of her healthy client.

16

client violates Rule 1.4(b) when the client is denied the opportunity to make an informed decision). McLaughlin should have consulted with her client to permit Ms. Leedom to make an informed decision about her financial management because the circumstances of the on-going representation had changed. *See Steinberg*, 395 Md. at 363.

## MLRPC 1.5: Fees

Rule 1.5(a) prohibits attorneys from agreeing to, charging, or collecting "unreasonable fee[s]," and sets out a list of non-exclusive factors to determine whether a fee is reasonable. It is unclear how McLaughlin earned the $5,175 she deducted from the escrow account, other than for work "through 08/2014." McLaughlin's letter stated that this fee related to the sale of Ms. Leedom's Aberdeen properties. But her letter does not contain sufficient information to conclude that the fee was reasonable under Rule 1.5(a). "[A]n otherwise-reasonable fee can become unreasonable if the lawyer fails to earn it." *Attorney Grievance Comm'n v. Garrett*, 427 Md. 209, 224 (2012).

In her initial engagement letter to Ms. Leedom, McLaughlin explained that she sent statements for fees and disbursements on a monthly basis, but she never provided an invoice or billing statement for this fee to anyone. Failure to send invoices when an attorney is required to do so is unreasonable. *See Attorney Grievance Comm'n v. Green*, 441 Md. 80, 99 (2014); *Attorney Grievance Comm'n v. Rand*, 445 Md. 581, 608 (2015). The hearing judge's findings of fact, and our own review of the record establish that McLaughlin never submitted an invoice for this charge, nor supplied a basis for her fee. Therefore, she violated Rule 1.5(a).

17

## MLRPC 1.15: Safekeeping Property

Rule 1.15(a) requires a lawyer "to keep the property of clients separate from the lawyer's own property." *Attorney Grievance Comm'n v. Hamilton*, 444 Md. 163, 188 (2015). This Court has consistently held that "an attorney's failure to withdraw earned fees from his or her trust account in a timely manner results in an impermissible commingling of funds violative of MLRPC 1.15(a) . . . ." *Attorney Grievance Comm'n v. Weiers*, 440 Md. 292, 305 (2014).

The hearing judge found that McLaughlin violated Rule 1.15(a) when she failed to remove her earned fees from trust monies. Because we do not know what legal services she provided, or when, it is impossible to know whether or when she should have removed these funds. Therefore, we decline to reach this issue, which did not, in any event, affect our decision to disbar McLaughlin.

Rule 1.15(e) applies to property that comes into an attorney's possession "in the course of representing a client." If two or more persons claim an interest in the property, the lawyer is required to keep that property separate pending the resolution of the dispute. *Id.* The hearing judge found that all of Bar Counsel's averments were admitted because McLaughlin never answered the Petition, nor appeared at the hearing. For that reason, he concluded that McLaughlin had violated 1.15(e).

It is not clear to us whether 1.15(e) would apply to the dispute between Mrs. McCabe and Mr. Leedom. McLaughlin received the property in the course of the representation. But our review of the record does not show that anyone disputed that Ms. Leedom owned the funds, or that Mrs. McCabe or Mr. Leedom claimed an interest in the

funds. Our cases applying 1.15(e) typically address a lawyer's failure to pay bills out of settlement funds on a client's behalf, or turn settlement funds over to a client.[14] This rule also applies to attorney fee disputes. *See Attorney Grievance Comm'n v. Gracey*, 448 Md. 1, 23 (2016). There is no evidence in the record that anyone disputed McLaughlin's fee because she never notified anyone that she was taking the fee. We similarly decline to reach this issue because it does not affect our decision to disbar McLaughlin.

## MLRPC 8.1: Bar Admission and Disciplinary Matters

Rule 8.1(a) prohibits a lawyer from knowingly making false statements of material fact in connection with disciplinary matters. An attorney violates this rule "whenever an attorney makes intentional misrepresentations to Bar Counsel." *Attorney Grievance Comm'n v. Mitchell*, 445 Md. 241, 259 (2015). Bar Counsel identified five "knowing and intentional" misrepresentations McLaughlin made in her September 18 letter to Bar Counsel. The hearing judge found, apparently by allegation and default, that McLaughlin made five "knowing and intentional" misrepresentations to Bar Counsel, and that this conduct violated Rule 8.1(a). We review these misrepresentations in greater detail.

### 1. Misrepresentation regarding Ms. Leedom's preference that Mrs. McCabe should not be involved in her finances or her day-to-day care.

McLaughlin misrepresented that Ms. Leedom did not want Mrs. McCabe involved in managing her finances or her day-to-day care, and became "agitated and combative" when Mrs. McCabe took her to appointments, or when her name came up. Mrs. McCabe

---

[14] *See, e.g.*, *Attorney Grievance Comm'n v. Olszewski*, 441 Md. 248, 269 (2015); *Attorney Grievance Comm'n v. Thaxton*, 415 Md. 341, 362 (2010).

provided letters to Bar Counsel from Ms. Leedom's physician and daily caregivers. All of these letters refuted McLaughlin's assertion and stated that Mrs. McCabe was involved in her mother's day-to-day care and that they had a loving and positive relationship. McLaughlin did not provide any information supporting her claim, and we find that the record sufficiently demonstrates the falsity of her statement.

### 2. Misrepresentation regarding the frequency of contact with Mr. Leedom.

McLaughlin claimed frequent contact with Mr. Leedom in the fall of 2014, including in-person meetings. McLaughlin's letter states that she met with Mr. Leedom in September and October 2014, but he began cancelling meetings and never rescheduled at the end of October 2014. Mrs. McCabe explained that both she and Mr. Leedom's wife regularly contacted McLaughlin after July 2014 because Mr. Leedom was not accounting for his mother's finances. McLaughlin told them that Mr. Leedom had set up meetings, but failed to attend or reschedule. It is unclear when McLaughlin had meetings with Mr. Leedom, but an e-mail from May 2015 she enclosed in her September 18 letter suggests that Mr. Leedom was meeting with McLaughlin to discuss his mother's care in August of 2014—but not after that point. McLaughlin did not provide any other information substantiating her claims of regular meetings with Mr. Leedom.

### 3. Misrepresentation regarding correspondence with Mrs. McCabe.

Mrs. McCabe's initial complaint to Bar Counsel stated she sent a certified letter to McLaughlin in April 2015, which requested a full accounting of the escrow account, and included a copy of Ms. Leedom's new power of attorney naming Mrs. McCabe as her agent. McLaughlin told Mrs. McCabe that she had not received the letter, although Mrs.

20

McCabe had a received signed confirmation card.  The individual who signed the card told Mrs. McCabe that McLaughlin had been given the letter.  McLaughlin subsequently claimed that she found the letter, and that she mailed a response on May 15.  McLaughlin's September 18 letter encloses a copy of a letter dated May 15, 2015.  There is no evidence that she mailed the letter.  Mrs. McCabe stated that she never received it.

### 4. Misrepresentation regarding Mr. McCabe's willingness to deal with Ms. Leedom's affairs and statements he made about Mrs. McCabe.

McLaughlin misrepresented that Mr. McCabe said on multiple occasions that he did not want to deal with his wife, or have her involved in Ms. Leedom's affairs, and that he wanted nothing to do with his wife's actions.  Mr. McCabe provided information regarding this claim to Bar Counsel.  He explained that once he and his wife learned that Mr. Leedom had been mishandling his parents' financial affairs, Mr. McCabe addressed his father-in-law's financial situation, and attempted to remain neutral regarding Ms. Leedom's finances.  He asserts that McLaughlin used this information out of context.  Mr. McCabe denied that he ever said that he wanted nothing to do with his wife's actions.

### 5. Misrepresentation regarding the escrow account.

McLaughlin misrepresented that she had explained on several occasions to Mrs. McCabe that there was never a separate escrow account in Ms. Leedom's name.  McCabe's initial complaint stated that everyone had agreed that McLaughlin would invest the proceeds of the sale of the Aberdeen properties in Fidelity Investments.  One of McLaughlin's emails confirms that this was the original understanding.  Mrs. McCabe independently sought account information from a bank after McLaughlin failed to provide

21

an accounting and told Mrs. McCabe that no separate account existed. When McLaughlin sent an accounting in May 2015, she stated that the funds were in her IOLTA escrow account, and not a separate account in Ms. Leedom's name. Mrs. McCabe was apparently unaware of this until McLaughlin told her in May 2015. McLaughlin's letter misrepresents the course of events and suggests an agreement that did not exist.

The September 18 letter demonstrates **at least** five intentional misrepresentations to Bar Counsel about McLaughlin's representation of Ms. Leedom. For that reason, McLaughlin has violated Rule 8.1(a). *See Attorney Grievance Comm'n v. Brigerman*, 441 Md. 23, 39 (2014) (knowingly making false statements to Bar Counsel violates 8.1(a)).

### Rule 8.1(b)

"This Court has a long history of holding that an attorney violates Rule 8.1(b) by failing to respond to letters from disciplinary authorities requesting information." *Attorney Grievance Comm'n v. Fezell*, 361 Md. 234, 249 (2000). Bar Counsel sent McLaughlin three requests for information. McLaughlin told the AGC investigator that she had received one of those requests, but did not think she had to respond. In *Attorney Grievance Comm'n v. Kremer*, 432 Md. 325 (2013), we found that an attorney violated Rule 8.1(b) when he did not respond to a Petition for Discipline, told an investigator that he would respond, but failed to do so. *Id.* at 336. McLaughlin's conduct is substantially similar. Bar Counsel's letters included a warning that a knowing failure to respond to the communication constituted a violation of Rule 8.1. McLaughlin received Bar Counsel's correspondence, knew she was required to reply, and did not comply. Therefore, she violated Rule 8.1(b).

**Rule 8.4: Misconduct**

Rule 8.4 defines professional misconduct for an attorney. An attorney violates Rule 8.4(a) "when other Rules of Professional Conduct are breached." *Attorney Grievance Comm'n v. Nelson*, 425 Md. 344, 363 (2012). For the reasons discussed *supra*, we have concluded that McLaughlin has violated Rules 1.3, 1.4, 1.5(a), and 8.1(a) and (b). McLaughlin, therefore, has violated Rule 8.4(a). *See Garrett*, 427 Md. at 227.

Subsection (c) prohibits an attorney from engaging in "conduct involving dishonesty, fraud, deceit, or misrepresentation." This Court has explained that "[d]ishonest acts, in and of themselves are violative of Rule 8.4(c)." *Attorney Grievance Comm'n v. Gisriel*, 409 Md. 331, 383 (2009). We have consistently found that attorneys violate Rule 8.4(c) by making false statements to Bar Counsel. *See Attorney Grievance Comm'n v. Barnett*, 440 Md. 254, 266–67 (2014). McLaughlin violated Rule 8.4(c) when she knowingly and intentionally made multiple misrepresentations to Bar Counsel.

An attorney commits professional misconduct when she "engage[s] in conduct that is prejudicial to the administration of justice." MLRPC 8.4(d). This is conduct that "reflects negatively on the legal profession and sets a bad example for the public at large." *Attorney Grievance Comm'n v. Goff*, 399 Md. 1, 22 (2007). Here, McLaughlin did not communicate with her client about information that significantly affected the representation, and failed to act diligently in protecting her client's interests. She charged a fee without submitting invoices or explaining the basis for her fee. When her misconduct came under investigation, she made multiple misrepresentations to Bar Counsel and ignored Bar Counsel's requests for information.

23

We have found that this kind of conduct reflects negatively on the legal profession and is prejudicial to the administration of justice. In *Attorney Grievance Comm'n v. Shapiro*, 441 Md. 367, 394 (2015), we explained that "[a]ttorneys violate MLRPC 8.4(d) when they fail to keep their clients advised of the status of the representation and represent diligently their client's interests." *See also Thomas*, 440 Md. at 555. In *Rand*, we found that failing to provide invoices, and misrepresentations to Bar Counsel, violated Rule 8.1(d). 445 Md. at 613. Dishonesty to Bar Counsel regarding a disciplinary matter violates Rule 8.4(d). *See Attorney Grievance Comm'n v. Thomas*, 445 Md. 379, 396 (2015). McLaughlin, therefore, violated Rule 8.4(d).

### BP § 10-306: Misuse of Trust Money

BP § 10-306 prohibits an attorney from "us[ing] trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer." BP § 10-307[15] requires that an attorney's violation be willful to subject the attorney to disciplinary proceedings under BP § 10-306. *See Attorney Grievance Comm'n v. Adams*, 349 Md. 86, 98 (1998). This Court has explained that although willfulness "does not require proof of a specific criminal intent, it does require at least proof of a general intent." *Attorney Grievance Comm'n v. Glenn*, 341 Md. 448, 482 (1996).

---

[15] **Md. Code Business Occupations & Professions (1957, 2010 Repl. Vol.), § 10-307. Disciplinary Action**
> A lawyer who willfully violates any provision of this Part I of this subtitle, except for the requirement that a lawyer deposit trust moneys in an attorney trust account for the charitable purposes under § 10-303 of this subtitle, is subject to disciplinary proceedings as the Maryland Rules provide.

24

McLaughlin agreed to serve as an escrow agent and hold Ms. Leedom's funds until Mr. Leedom and Mrs. McCabe could agree how to use them for Ms. Leedom's benefit. The funds were not deposited as advance fees or a retainer. McLaughlin's disbursement to Mr. Leedom was inconsistent with the purpose for which the money was entrusted to her. She misappropriated funds when she paid herself $5,175 from those funds without billing her client, or obtaining consent to use the funds for that purpose. *See id.* at 484 (misappropriation occurs through "unauthorized use . . . of a client's funds entrusted to him or her, whether or not temporary or for personal gain or benefit"). The September 18 letter demonstrates that she intentionally took funds from the account to pay herself when the funds were to be used for Ms. Leedom's benefit. McLaughlin, therefore, violated BP § 10-306.

We agree with the hearing judge that Bar Counsel produced clear and convincing evidence that McLaughlin violated MLRPC 1.3, 1.4(a) and (b), 1.5(a), 8.1(a) and (b), 8.4(a), (c), and (d), and BP § 10-306. We hold that disbarment is the appropriate sanction for McLaughlin's violations of the Rules of Professional Conduct.

**Sanction For Violations of MLRPC Rules 1.3, 1.4(a) and (b), 1.5(a), 8.1(a) and (b), 8.4(a), (c), and (d), and BP § 10-306**

Bar Counsel recommended disbarment based on McLaughlin's "dishonest conduct and multiple aggravating factors." McLaughlin argued that disbarment is not appropriate because she was prejudiced by lack of notice.[16]

---

[16] The record is replete with evidence that McLaughlin received adequate notice. If the facts are incomplete, as McLaughlin asserted, it is because she chose not to participate

This Court imposes sanctions on attorneys "'not to punish' the lawyer, but instead 'to protect the public and the public's confidence in the legal profession . . . .'" *Attorney Grievance Comm'n v. McDowell*, 439 Md. 26, 45 (2014). This Court also "aim[s] to deter other lawyers from violating the Rules of Professional Conduct." *Attorney Grievance Comm'n v. Taylor*, 405 Md. 697, 720 (2008). Sanctions should be "commensurate with the nature of the gravity of the misconduct and the intent with which it was committed." *Id.* The severity of a sanction "depends upon the facts and circumstances of the case, taking account of any particular aggravating or mitigating factors." *Id.* "[T]his Court considers '(a) the duty violated; (b) the lawyer's mental state; (c) the potential or actual injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors.'" *McDowell*, 439 Md. at 45 (quoting American Bar Association, *Standards for Imposing Lawyer Sanctions* at III.C.3.0 (1992)).

McLaughlin's lack of participation until the proceedings before this Court make it difficult to determine her mental state. In her September 18 letter, McLaughlin appears intent on blaming Mrs. McCabe for any problems that arose during the representation to absolve herself of any misconduct. During argument before this Court, she claimed that she had been caught in the middle of a family dispute, but that she had done nothing wrong.

The actual injury McLaughlin caused is a serious one. An elderly, vulnerable adult lost $10,000 for her care. She also lost $5,175 without knowing that her attorney charged that fee or why. It is unknown whether Ms. Leedom lost additional funds when

in the proceedings and provide information that might have supported other factual findings or mitigation.

26

McLaughlin did not advise her client of the dangers inherent in retaining an individual with active substance abuse issues as her power of attorney. McLaughlin's inaction put her client at risk for future financial losses.

Mitigation is not available "without the attorney providing supporting evidence of the existence of such factors." *Kremer*, 432 Md. at 339. This Court has previously reasoned that "the availability for consideration of mitigating factors cannot be undertaken where an attorney neither attends his or her evidentiary hearing nor responds to Bar Counsel's requests for written responses to the client's complaint." *Id.* at 340. McLaughlin never participated in the proceedings until she appeared before this Court. We conclude that McLaughlin has no mitigation available to her.

Aggravating factors include:

> (1) prior attorney discipline; (2) a dishonest or selfish motive; (3) a pattern of misconduct; (4) multiple violations of the MLRPC; (5) bad faith obstruction of the attorney discipline proceeding by intentionally failing to comply with the Maryland Rules or orders of this Court [or the hearing judge]; (6) submission of false evidence, false statements, or other deceptive practices during the attorney discipline proceeding; (7) [a] refusal to acknowledge the [misconduct's] wrongful nature; (8) [the victim's] vulnerability; (9) substantial experience in the practice of law; (10) indifference to making restitution [or rectifying the misconduct's consequences]; (11) illegal conduct, including that involving the use of controlled substances[; and (12) likelihood of repetition of the misconduct].

*Shuler*, 443 Md. at 506–07 (quoting *Attorney Grievance Comm'n v. Marcalus*, 442 Md. 197, 207 (2015) (brackets omitted)). The hearing judge found that aggravating factors 4, 5, 6, 7, 8, 9, 10 and 12 applied. Upon our review of the record, we agree.

27

McLaughlin violated multiple Rules of Professional Conduct and BP § 10-306, thus factor 4 is present. This Court has found bad faith obstruction when attorneys knowingly failed to respond to Bar Counsel's requests for documents, attend evidentiary hearings, submit written responses, or otherwise fail "to comply with the rules or lawful directives of the AGC." *Kremer*, 432 Md. at 340–41; *see also Attorney Grievance Comm'n v. Dominguez*, 427 Md. 308, 327 (2012). McLaughlin received multiple communications from Bar Counsel at various stages of the disciplinary investigation and proceedings. After her initial response, she did not comply with further requests for information. McLaughlin was aware that AGC was investigating a complaint, but claims that she assumed matters never proceeded further, despite meeting with an AGC investigator who informed her that she was required to respond to Bar Counsel. A prudent attorney who did not receive such important anticipated communications would have contacted Bar Counsel, particularly if, as McLaughlin claimed, she was beset with mail delivery problems.[17]

---

[17] McLaughlin claimed that she had trouble receiving mail, and that she only received "sporadic" mail at three different addresses. Attorneys are, however, required to maintain an address on file with the Client Protection Fund:

> Each attorney shall give written notice to the trustees of every change in the attorney's resident address, business address, e-mail address, telephone number, or facsimile number within 30 days of the change. The trustees shall have the right to rely on the latest information received by them for all billing or other correspondence.

Maryland Rule 19-605(b). Prior to the July 1, 2016 Amendments, this Rule was numbered 16-811.5. If McLaughlin had difficulties receiving mail, it was incumbent on her to take action to ensure that the address on file was one where she could receive mail.

28

Because McLaughlin intentionally did not respond to Bar Counsel's communications, factor 5, "bad faith obstruction of the attorney discipline proceeding" is present. We have found that McLaughlin made multiple misrepresentations in her sole communication to Bar Counsel. For that reason, factor 6, "submission of false evidence, false statements, or other deceptive practices," is present. *See Mitchell*, 445 Md. at 264–65.

Ms. Leedom was 89 years of age at the time the misconduct occurred and had been diagnosed with dementia. Because Ms. Leedom was a vulnerable adult, factor 8, the victim's vulnerability is present. McLaughlin emphasized that she was an experienced Estates and Trusts attorney. Despite her experience, which presumably included working with elderly, vulnerable individuals, she failed to act in her client's best interests and mishandled client funds. Her "substantial experience in the practice of law" is an aggravating factor.

Factor 7, "refusal to acknowledge the misconduct's wrongful nature," and factor 10, "indifference to making restitution or rectifying the misconduct's consequences" are also present. *Shuler*, 443 Md. at 506–07. At argument, McLaughlin never conceded that her conduct **might** have been improper. She has never admitted to violating the Rules of Professional Conduct, nor did she participate in the proceedings until argument before this Court. *See Thomas*, 440 Md. at 557 ("Absence from the proceedings also indicates a refusal to acknowledge the wrongful nature of . . . conduct and indifference to making restitution . . . ."). McLaughlin told this Court that she was not sure what else she could have done to serve her client appropriately. She could have done more. At a minimum,

29

she could have communicated with her client, or investigated the information she received suggesting that Mr. Leedom might be mismanaging his mother's finances. She certainly could have provided itemized billing invoices on a regular basis. And if McLaughlin became concerned that her client's age and vulnerability made her insistence that Mr. Leedom serve as power of attorney unreasonable, she could have taken action under MLRPC 1.14 (Client with Diminished Capacity). An experienced Estates and Trusts attorney should know that.

Factor 12, the "likelihood of the repetition of the misconduct" is present here. The hearing judge found that "absent recognition of and remorse for her wrongdoing, there is a substantial likelihood that she will repeat it." Based on our review of the record, and McLaughlin's insistence that her conduct did not violate any of the Rules of Professional Conduct, we agree.

McLaughlin violated multiple Rules of Professional Conduct and BP § 10-306. Her violations of MLRPC 8.1(a) and 8.4(c) and (d), however, persuade us that disbarment is the proper sanction. We have explained that "[d]isbarment ordinarily should be the sanction for intentional dishonest conduct," *Attorney Grievance Comm'n v. Vanderlinde*, 364 Md. 376, 418 (2001), absent "compelling extenuating circumstances . . . ." *Id.* at 413. McLaughlin has not shown any circumstances that could excuse her conduct. She made **at least** five intentional misrepresentations to Bar Counsel to evade the consequences of her actions. "The appropriate sanction for that kind of behavior ordinarily is disbarment." *Attorney Grievance Comm'n v. Payer*, 425 Md. 78, 95 (2012) (deceitful conduct towards Bar Counsel).

McLaughlin's failure to participate in the attorney disciplinary proceeding, lack of remorse or awareness, and the nature of the underlying misconduct only underline the propriety of this sanction. *See Attorney Grievance Comm'n v. Dunietz*, 368 Md. 419, 431 (2002) ("Respondent's continuing disregard for the Attorney Grievance Process, his apparent indifference to the tenets of his chosen profession, the dereliction of his duties to his client and his ostensible lack of remorse for his misconduct, warrant [disbarment]."). McLaughlin's eleventh-hour appearance before this Court does not excuse her apathy towards attorney discipline proceedings or her dishonest conduct. We are convinced that disbarment is the appropriate sanction to protect the public and deter future violations of the Rules of Professional Conduct.